**Francis Raymond DWYER, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. 1029.

Supreme Court of Alaska.

Jan. 20, 1969.

Francis Raymond Dwyer, pro se.

Douglas B. Baily, Dist. Atty., H. Bixler Whiting, Asst. Dist. Atty., Anchorage, for appellee.

OPINION

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

RABINOWITZ, Justice.

In December 1967, appellant was sentenced to concurrent five-year terms of imprisonment upon his pleas of guilty to two separate counts of burglary not in a dwelling house. In May of 1968, appellant applied to the lower court for a writ of habeas corpus. The superior court's denial of appellant's application for habeas corpus relief is questioned in this appeal.

In the lower court, as well as in his appeal to this court, it appears the crux of appellant's position is that he "was unlawfully extradited from one state to another and through a foreign country, to wit, Canada, without his consent * * * [or] approval * * *." From the record it appears that on January 26, 1968, appellant was transported by aircraft from the State of Alaska to the federal correctional institution located at Lompoc in the State of California. Appellant concedes his transfer was necessitated by the fact that the "State of Alaska had not the appropriate allocated facilities * * * [in] which to house all convicted felons." Appellant further concedes that his present incarceration outside the State of Alaska is provided for by contract between the United States and the State of Alaska.

Section 5003(a), 18 U.S.C. (1952), authorizes the Attorney General of the United States, upon certification by the Director of the Bureau of Prisons that adequate facilities and personnel are available, to

> contract with the proper officials of a State or Territory for the custody, care, subsistence, education, treatment, and training of persons convicted of criminal offenses in the courts of such State or Territory * * *.[1]

Alaska's legislature has vested parallel authority in our Commissioner of Health and Welfare. AS 33.30.060(a) provides in part that:

> If the commissioner determines that suitable state prison facilities are not available, he may enter into an agreement with the proper authorities of the United States, another state, or a political subdivision of this state to provide for the safekeeping, care, subsistence, proper government, discipline and to provide programs for the reformation and re-

1. 18 U.S.C. § 5003(c) (1952), provides:
   Unless otherwise specifically provided in the contract, a person committed to the Attorney General hereunder shall be subject to all the provisions of law and regulations applicable to persons committed for violations of laws of the United States not inconsistent with the sentence imposed.

habilitation and treatment of prisoners. *Prison facilities made available to the commissioner by agreement may be in this state, or in any other state, territory or possession of the United States.* (emphasis added.)

Pursuant to subsection (b) of AS 33.30.060, the legislature specifically provided for Alaska's retention of jurisdiction over any prisoner incarcerated, pursuant to an agreement entered into under AS 33.30.060(a), in a facility of another state or the United States.[2] Additionally, this same subsection makes the authority which receives the prisoner under such an agreement an agent of the State of Alaska. In regard to persons convicted of felonies, the Commissioner of Health and Welfare is authorized to designate the facility where the sentence is to be served. It is further provided that the commissioner

> may designate any available, suitable and appropriate prison facility for the service of sentence by a prisoner, whether or not it is maintained by the state, and whether it is inside or outside the judicial district where the prisoner was convicted, or whether or not it is in another state, territory or possession of the United States.[3]

Analysis of these statutory provisions has led us to the conclusion that appellant's present incarceration in a federal institution outside the State of Alaska is lawful.

Judicial precedent has supported the validity of contractual arrangements entered into under statutory provisions similar to those found in AS 33.30.060 and AS 33.30.100. In Duncan v. Madigan,[4] a State of Maine prisoner instituted habeas corpus proceedings against the warden of the federal penitentiary at Alcatraz, California. There the prisoner claimed that 18 U.S.C., Section 5003, which authorizes the Attorney General of the United States to contract with state officials for the custody of state prisoners in federal facilities, was invalid. In response to this argument, the court in *Duncan* stated:

> The argument that power to confine state prisoners, or to enact § 5003, has never been delegated by the Constitution to Congress, and that no such power can be implied, finds no support in any adjudicated cases, and we think finds no basis in reason. That under our dual form of government there may be a pooling of state and federal power for cooperative action, to the end that the public welfare of both state and nation may be simultaneously promoted, where both have a common concern, is now well settled.[5]

Subsequent to this decision, the Supreme Judicial Court of Maine, in a case involving the same prisoner, wrote:

> The Congress of the United States (U.S.C.A., Title 18 § 5003) and our Legislature (Section 32–A) have authorized the contract with which we are here concerned. There is a mutual interest and responsibility for the housing, treating, and rehabilitation of persons who have been found unwilling or incapable of meeting the demands of society. The federal government has established and maintains a variety of institutions to meet varying penal needs. It has been, and doubtless will be, impossible for each. State to furnish comparable facilities.

---

2. The full text of subsection (b) of AS 33.30.060 reads:

    An authority, receiving physical custody for the purpose of incarceration of a person sentenced by a court under the terms of an agreement made under this section, shall be considered as acting solely as agent of this state. This state retains jurisdiction over a person incerated in an institution of another state, the United States, or a political subdivision of this state.

3. AS 33.30.100. Under the provisions of AS 33.30.120, the Commissioner of Health and Welfare "may order a prisoner transferred from one prison facility to another."

4. 278 F.2d 695, 696 (9th Cir. 1960), cert. denied, 366 U.S. 919, 81 S.Ct. 1096, 6 L.Ed.2d 242 (1961), rehearing denied, 366 U.S. 947, 81 S.Ct. 1675, 6 L.Ed.2d 858 (1961), cert. denied, 368 U.S. 905, 82 S.Ct. 185, 7 L.Ed.2d 99 (1961).

5. Id.

The availability of these institutions to the states is fully as beneficial as it is detrimental to those persons required to live in them. We cannot expect all of the inmates to admit to this view.

The validity of a contract between the Attorney General of the United States and the State to transfer federal prisoners to state physical custody as provided in U.S.C.A., Title 18, § 4002 was affirmed in Rosenberg v. Carroll, 99 F.Supp. 630 (D.C.N.Y.1951) and the validity of a contract between the Attorney General of the United States and a State to accept transfer of a state prisoner into federal physical custody as provided by U.S.C.A., Title 18, § 5003 was affirmed in Duncan, supra.[6]

We therefore conclude that appellant's present incarceration upon a sentence for violation of Alaska's burglary statute, in a federal facility located in the State of California is not unlawful. It is clear that Alaska's legislature authorized our Commissioner of Health and Welfare to enter into agreements with the proper United States authorities for the placement of Alaskan prisoners in federal facilities; that the Congress of the United States has authorized the Attorney General of the United States to contract with proper state officials for the care of state prisoners in federal facilities; and that our legislature has authorized the Commissioner of Health and Welfare to designate an appropriate facility for service of a sentence by an Alaska prisoner whether or not such facility is in another state, territory, or possession of the United States. From the record it appears that appellant was transferred to the federal facility at Lompoc, California under contract, and a designation, made pursuant to the statutory authority we have previously mentioned. We therefore conclude appellant's incarceration at Lompoc, California is lawful and, in accord with Roberts v. State,[7] we affirm the superior court's denial of appellant's application for habeas corpus and order this appeal dismissed.[8]

6. Duncan v. Ulmer, 159 Me. 266, 191 A. 2d 617, 625 (1963). The imprisonment of a federal prisoner in a state facility has been held lawful.

Authorization for the placement of federal prisoners in state facilities is derived from 18 U.S.C. § 4002 (1948). The statute reads in part as follows:

For the purpose of providing suitable quarters for the safekeeping, care, and subsistence of all persons held under the authority of any enactment of Congress, the Director of the Bureau of Prisons may contract, for a period not exceeding three years, with the proper authorities of any State, Territory, or political subdivision thereof, for the imprisonment, subsistence, care, and proper employment of such persons.

In Little v. Swenson, 282 F.Supp. 333, 337 (D.C.W.D.Mo.1968), the court said:

In the absence of exceptional circumstances not present in this case showing an abuse of the Attorney General's discretion in designating a prisoner's place of confinement for purposes of serving a federal sentence, the prisoner is not deprived of any constitutional right. This is true even where the Attorney General transfers a prisoner to a state penitentiary so that the prisoner may serve a federal and state sentence concurrently. Lipscomb v.

Stevens (C.A.6, 1965) 349 F.2d 997, cert. den. 382 U.S. 993, 86 S.Ct. 573, 15 L.Ed.2d 479.

See also Rena v. United States, 58 F. 2d 624, 625 (5th Cir. 1932); Rosenberg v. Carroll, 99 F.Supp. 630, 632 (D.C.S.D. N.Y.1951).

7. 445 P.2d 674 (Alaska 1968).

8. Compare Ringo v. Turner, 16 Utah 2d 298, 400 P.2d 15 (1965).

No other facet of appellant's out-of-state incarceration has been presented to us for adjudication in this appeal. Inherent in the decision reached in the case at bar is our conclusion that appellant's wrongful extradition claims are without merit. Art. IV, § 2 of the United States Constitution provides:

A person charged in any state with treason, felony, or other crime, who shall flee from justice, and be found in another state, shall on demand of the executive authority of the state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crime.

Under the facts of this record, appellant's incarceration in the State of California does not make him a fugitive from justice under art. IV, § 2, of the United States Constitution.