**Richard BRANDON, Appellant,**

v.

**STATE of Alaska, DEPARTMENT OF CORRECTIONS, Appellee.**

No. S–6983.

Supreme Court of Alaska.

June 6, 1997.

Rehearing Denied July 1, 1997.

Richard Brandon, Florence, AZ, pro se.

Timothy W. Terrell, Assistant Attorney General, Anchorage, Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

*OPINION*

MATTHEWS, Justice.

## I. *INTRODUCTION*

Richard Brandon, a state prisoner serving a long sentence, was transferred to a prison in Arizona. He contends that the transfer interferes with his rehabilitation because his family will not be able to visit him in Arizona. The question presented by this case is whether the superior court had jurisdiction to hear his administrative appeal from the transfer decision of the Department of Corrections (DOC). Our answer is "yes."

## II. *FACTS AND PROCEEDINGS*

Richard Brandon is serving a twenty-five-year sentence for a 1990 conviction. Due to overcrowding in Alaska prisons DOC implemented a population management plan. As part of this plan, DOC contracted with the Corrections Corporation of America to house about 200 Alaska inmates at the Central Arizona Detention Center in Florence, Arizona.

DOC selected inmates for transfer by asking for volunteers and then "going through its records and finding inmates who fit two broad categories." One of the categories was "inmates with seven and one-half or more years to serve." Brandon was selected under this category.

Initially, Brandon was incarcerated at the Spring Creek Correctional Center. On November 28, 1994, Brandon was given notice of a classification hearing concerning "[p]ossible transfer to an institution outside Alaska." A classification hearing was held November 30, 1994. Hearing Officer Donald Nelson recommended transfer while acknowledging that Brandon's family was in Alaska and made weekly visits. Superintendent Larry Kincheloe subsequently approved the recommendation.

On December 15, 1994, Brandon appealed to DOC Commissioner Larry McKinistry. In this appeal, Brandon claimed: (1) the hearing was illegal because only two hearing officers were present; (2) the outcome of the hearing was predetermined; (3) fair consideration was not given to the rehabilitative nature of family visits; and (4) the hearing

officers erred in finding that rehabilitation would not be adversely affected by the transfer. On December 19 the appeal was returned as premature because the central classification office had not yet notified Brandon of the transfer. On that same day, Chief Classification Officer Robert P. Spinde informed Brandon that due to a possible error in providing notice of the hearing, Brandon would be given forty-eight hours to submit further relevant information.

On January 1, 1995, Brandon filed an appeal from DOC's December 19 decision with the superior court. The appeal claimed that the December 15 appeal to the DOC commissioner was "arbitrarily rejected." The appeal listed various due process violations.

On January 3 Brandon was given notice of his transfer to the Arizona prison. On January 8 Brandon submitted an appeal similar to the December 15 appeal to the DOC deputy commissioner. On January 10 this appeal was denied. It appears that no appeal of this denial was filed; rather, the superior court continued to work from the original January 1 appeal.

DOC moved to dismiss the appeal claiming the court lacked jurisdiction. It argued that the court did not have jurisdiction to review this type of decision in an administrative appeal because the decision to transfer Brandon was not made in an "adjudicative" proceeding or in a proceeding that produced a record capable of review.

On January 20 Brandon was transferred. On February 8 the superior court granted DOC's motion to dismiss the appeal, finding that the court lacked jurisdiction because the decision to transfer "was not made in the course of an adjudicative proceeding which produced a record capable of review."

Brandon appeals this decision, claiming that the superior court erred in granting the motion to dismiss for lack of jurisdiction.

## III. *STANDARD OF REVIEW*

The issues of statutory interpretation involved in this appeal are reviewed under a substitution of judgment standard. *Longwith v. State, Dep't of Natural Resources*, 848 P.2d 257, 260 n. 5 (Alaska 1992). Constitutional issues present questions of law and are to be reviewed de novo. *Keane v. Local Boundary Comm'n*, 893 P.2d 1239, 1241 (Alaska 1995).

## IV. *DISCUSSION*

Alaska Statute 22.10.020(d) states, "The superior court has jurisdiction in all matters appealed to it from a[n] ... administrative agency when appeal is provided by law." We have previously stated that neither the Administrative Procedure Act, AS 44.62.010–.650, nor any other statutory provision provides for an appeal from a DOC administrative decision. *Owen v. Matsumoto*, 859 P.2d 1308, 1309 (Alaska 1993). Thus AS 22.10.020(d) does not confer jurisdiction on the superior court to hear this appeal.

■ However, we have held that administrative appeals are proper from certain DOC determinations even when not authorized by statute. *See Hertz v. Carothers*, 784 P.2d 659, 660 (Alaska 1990). For example, "an inmate [has] a right to judicial review of major disciplinary proceedings when issues of constitutional magnitude are raised." *Id.* at 660; *Department of Corrections v. Kraus*, 759 P.2d 539, 540 (Alaska 1988); *McGinnis v. Stevens*, 543 P.2d 1221, 1236 n. 45 (Alaska 1975). In *Owen*, we explicitly declined to hold that "judicial review of DOC administrative decisions is limited to disciplinary action." 859 P.2d at 1310. Instead we stated that "[a]ny alleged violation of fundamental constitutional rights must be afforded judicial review." *Id.* Thus, it is clear that the superior court has jurisdiction to hear an administrative appeal of a DOC action involving constitutional issues.

■ In *Kraus*, we listed several reasons for allowing appellate review of DOC disciplinary decisions. These included the fact that the review would be based on the tape recording of the proceedings, rather than de novo reception of evidence, which is characteristic of appeals, and that appellate review is less expensive and time consuming than other avenues of judicial oversight. Finally, we stated a clear preference for reviewing administrative agencies' adjudicative decisions by means of an appeal. 759 P.2d at

540. Therefore an administrative appeal is appropriate where there is an alleged violation of fundamental constitutional rights in an adjudicative proceeding producing a record capable of review. *Owen*, 859 P.2d at 1310.

■ Brandon argues that the classification hearing was an adjudicative proceeding producing a record reviewable on administrative appeal. Brandon further asserts that the classification decision involved a fundamental constitutional right.

### A. *Is There a Fundamental Constitutional Right Involved?*

Brandon asserts a fundamental right to rehabilitation under the Alaska Constitution. DOC correctly concedes that there is a fundamental right to rehabilitation. Alaska Const. art. I, § 12; *Abraham v. State*, 585 P.2d 526, 530–33 (Alaska 1978).

Alaska Statute 33.30.061(b) provides that the DOC commissioner may designate an out-of-state prison for a prisoner only upon a determination "that rehabilitation or treatment of the prisoner will not be substantially impaired." Regulation 22 Alaska Adminis-

1. 22 AAC 05.252 provides in part:
   (a) A prisoner will, in the department's discretion, be transferred to a contract facility outside Alaska, except one operated by the Federal Bureau of Prisons, if the prisoner is provided a classification hearing as set out in 22 AAC 05.216 and a determination is made that the prisoner's rehabilitation or treatment would not be substantially impaired by the transfer.

2. That visitation is important to rehabilitation has been widely recognized.
   Visiting is the most direct link for the inmate with the world left behind. Indeed, visiting is indispensable to any realistic program of rehabilitation. No single factor has been proven to be more directly correlated with the objective of a crime-free return to society than visiting. The reason for this is almost too obvious to state: "Strained ties with family and friends increase the difficulty of making the eventual transition back to the community." If those ties are to be preserved, visiting is imperative. 2 Michael Mushlin, *Rights of Prisoners* § 12.00 (2d ed.1993) (footnotes omitted).
   Prison visits have long been recognized as critically important to inmates as well as the communities to which the inmates ultimately will return.

trative Code 05.252 echos this requirement.[1] Brandon asserts that DOC erred in determining that his rehabilitation would not be substantially impaired by transferring him to the Arizona facility. This is a question grounded on a fundamental constitutional right.[2]

### B. *Is the Classification Hearing an Adjudicative Proceeding?*

We have not explicitly defined the term "adjudicative proceeding" in the context of an administrative appeal. We have, however, discussed the meaning of adjudication in an administrative res judicata case. We explained:

The essential elements of adjudication include adequate notice to persons to be bound by the adjudication, the parties' rights to present and rebut evidence and argument, a formulation of issues of law and fact in terms of specific parties and specific transactions, a rule of finality specifying the point in the proceeding when presentations end and a final decision is rendered, and any other procedural elements necessary for a conclusive determination of the matter in question. Restate-

*Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 468, 109 S.Ct. 1904, 1912–13, 104 L.Ed.2d 506 (1989) (Marshall, J. dissenting).
Preservation of the family unit is important to the reintegration of the confined person and decreases the possibility of recidivism upon release.
*Id.* at 468, 109 S.Ct. at 1912–13 (quoting N.C.C.U.S.L. Model Sentencing and Corrections Act, § 4–115 Comment (1979)).
Virtually every statement on visitation by prison officials from the ACA Manual to the State Association of Correction Administrators (1972), every national study (e.g., the NAC) and every major textbook on corrections stresses the critical nature of visitation both in terms of the reduction of tension inside the prison and the facilitation of the ultimate rehabilitation of the prisoner by strengthening his ties with the "free world."
ABA Standards for the Administration of Criminal Justice, 14 Am.Crim.L.Rev. 377, 502 (1977).
Our recognition that visitation privileges are a component of the constitutional right to rehabilitation does not define their required scope or the permissible limits on their exercise. Such definitions will have to be achieved in future adjudications.

ment (Second) of Judgments § 83(2) (1982).

*Johnson v. Alaska State Dep't of Fish & Game,* 836 P.2d 896, 908 n. 17 (Alaska 1991). The classification hearing has many of the qualities of an adjudication. The prisoner is entitled to notice. 22 AAC 05.216(b).[3] The prisoner may prepare evidence before the classification committee. 22 AAC 05.216(b)(7).[4] The committee is directed to consider whether the prisoner's rehabilitation will be impaired. 22 AAC 05.252(a). The point at which a final decision is rendered by the committee and the various internal avenues of appeal are clear. Further, the hearing addresses individual rather than general policy determinations. *See Wickersham v. Commercial Fisheries Entry Comm'n,* 680 P.2d 1135, 1144 (Alaska 1984) ("When an agency makes individual factual determinations on which the impact of the law on the individual depends, it is acting in an adjudicative capacity."). For these reasons we conclude that the classification hearing is an adjudicative proceeding.

### C. Did the Classification Hearing Produce a Record Capable of Review

The hearing is required to be "tape recorded and kept in transcribable form." 22 AAC 05.216(4).[5] In addition the committee is to "make written factual findings" and "indicate the evidence relied upon" so as to "provide an adequate basis for review of its decision." 22 AAC 05.216(b)(8).[6] A form including the factors on which the decision was made is to be issued by the classification committee. 22 AAC 05.216(c).[7]

DOC finds significance in the fact that "[c]entral classification independently solicited and received information regarding such factors as an inmate's medical condition or legal proceedings." However, the information so received was documentary, is preserved in the record, and in any case was germane only to the initial classification decision, an issue not in dispute. Other than alleged procedural errors, the only disputed issue was whether the committee erred in determining that Brandon's rehabilitation would not be substantially impaired by the transfer. The evidence relevant to that issue is contained in the record.

## V. CONCLUSION

The classification determination implicates a constitutional right. The classification committee hearing is an adjudication and produces a record adequate for review. Though Brandon has other potential remedies, this court has clearly expressed a preference for an administrative appeal. Therefore we hold that the superior court has jurisdiction to hear the present administrative appeal.

REVERSED and REMANDED.

RABINOWITZ, Justice, dissenting in part.

I dissent from section IV.A. of the court's opinion.

3. 22 AAC 05.216(b) provides in part:

The prisoner is entitled to at least 48 hours' advance written notice of a classification hearing....

4. 22 AAC 05.216(b)(7) provides in part:

[B]efore the hearing the prisoner may prepare testimony, solicit statements, or compile other evidence if such action would not create a substantial risk of reprisal or undermine security of the facility.

5. 22 AAC 05.216(b)(4) provides in part:

[I]f the purpose of the hearing is ... transfer to a facility outside of Alaska, the hearing will be tape recorded and kept in transcribable form for
(A) 12 months if the classification action is appealed within the department;

(B) three years if the classification action is appealed to the Superior Court or the classification action resulted in a transfer to a facility outside of Alaska; or
(C) 30 days if the classification action is not appealed.

6. 22 AAC 05.216(b)(8) provides in part:

[T]he classification committee will make written factual findings, and will indicate the evidence relied upon in sufficient detail so as to provide an adequate basis for review of its decision....

7. 22 AAC 05.216(c) provides in part:

The classification committee shall complete the Classification Form for Sentenced Prisoners.... The decision as to custody and security status must be based on the factors contained in the form.

Brandon asserts that DOC violated his fundamental constitutional right to rehabilitation under article I, section 12 of the Alaska Constitution.[1] It is well established that a court may review prison administrative decisions only when they affect a fundamental constitutional right. *Abruska v. Department of Corrections*, 902 P.2d 319, 321 (Alaska 1995); *Owen v. Matsumoto*, 859 P.2d 1308, 1310 (Alaska 1993).[2] This court has not previously recognized a fundamental constitutional right to visitation. *See, e.g., McGinnis v. Stevens*, 543 P.2d 1221, 1237–38 (Alaska 1975) (finding no right to conjugal visits). The Supreme Court of the United States has unambiguously rejected the existence of such a right. *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460–61, 109 S.Ct. 1904, 1908–09, 104 L.Ed.2d 506 (1989).

On this record I would reject Brandon's effort to reformulate his transfer challenge as a claim that his constitutional right to rehabilitation has been violated. Given our precedents limiting the scope of a prisoner's constitutional right to rehabilitation and deferring to DOC's discretion in such matters as prisoner transfers, I would affirm the superior court's dismissal of Brandon's appeal for lack of subject matter jurisdiction. In short, I am of the view that Brandon has failed to raise a viable claim that any of his fundamental constitutional rights have been adversely impacted by virtue of his transfer.

Visitation does not qualify as the type of therapeutic program for adult prisoners to which the constitutional right to rehabilitation attaches. Rather, that right is a guarantee of access to programs designed to reform the prisoner.

This distinction was drawn in our first decision which recognized a constitutional right to rehabilitation. *Abraham v. State*, 585 P.2d 526 (Alaska 1978), addressed a native prisoner's complaint that he was denied access to alcohol abuse programs, that as a Yupik speaker he would be in virtual isolation in state prison, and that he would be denied his traditional native diet. *Id.* at 531, 533. The only grievance which this court acknowledged as raising a valid rehabilitation claim was Abraham's asserted denial of access to alcohol abuse programs. *Id.* at 533. Even the rather harsh circumstance of incarcerating Abraham where he would be unable to communicate with others was not viewed as implicating his right to rehabilitation.[3] *Abraham* thus established that rehabilitation is an enforceable constitutional interest, but only in the context of institutional programs designed to rehabilitate the inmate. *Id.*

Subsequent cases clarify and reaffirm this understanding. All define the constitutional right to rehabilitation as a guarantee of access to a formal program addressed to the specific problems that impelled the prisoner's antisocial conduct. *Abraham* was concerned with alcohol abuse. In *Ferguson v. Department of Corrections*, 816 P.2d 134, 139 (Alaska 1991), this court recognized a prisoner's claim of exclusion from work programs designed to redress a lack of job skills. We held that the Alaska Constitution creates "an enforceable interest in continued participation in [these types of] rehabilitation programs." *Id.* Other examples of constitutionally protected reform might include sex

1. Article I, section 12 of the Alaska Constitution provides in relevant part:

   Criminal administration shall be based upon the following: the need for protecting the public, community condemnation of the offender, the rights of victims of crimes, restitution from the offender, and the principle of reformation.

2. It is also firmly established that an inmate has no constitutional right to be incarcerated in a particular prison, either in-state or out-of-state. We have long held that placement and transfer of prisoners is a matter ultimately within the discretion of DOC. *Rust v. State*, 582 P.2d 134, 136–38 (Alaska 1978). In *Dwyer v. State*, 449 P.2d 282, 284 (Alaska 1969), this court upheld the transfer of inmates to out-of-state facilities. (At present

there are approximately 200 Alaskan prisoners incarcerated with Brandon in Arizona and several hundred other Alaskan prisoners in other locations around the country.)

Under the federal constitution, Brandon does not have a right to avoid an inter-state transfer, to be incarcerated at a particular prison, or to a particular classification. *Meachum v. Fano*, 427 U.S. 215, 223–29, 96 S.Ct. 2532, 2537–41, 49 L.Ed.2d 451 (1976); *Olim v. Wakinekona*, 461 U.S. 238, 244–48, 103 S.Ct. 1741, 1745–47, 75 L.Ed.2d 813 (1983).

3. We did address whether this de facto linguistic isolation constituted cruel and unusual punishment, and concluded that it did not. *Id.* at 533.

offender counseling or literacy assistance. Invariably, the constitutional right to rehabilitation has been grounded in a formal program addressed to a specific problem.[4]

While undoubtedly important visitation does not qualify as a constitutionally protected reform program. Like Abraham's language claim, Brandon alleges only that the change in the geographical location of his confinement is harsh and will limit visitation with his two children and family. The record does not indicate that Brandon claims he is denied access to appropriate rehabilitation programs. While the courts are a guarantor of access to such programs, it is not their role to define what needs should be addressed or how rehabilitative programs should be structured. Historically such decisions have been left to legislative judgment and the discretion of DOC. Respect for this allocation of authority precludes courts from reviewing, under the guise of enforcing a prisoner's constitutional right to rehabilitation, the impact on inmates of changes in their place of confinement.

The fact of DOC discretion, and concomitant limitations on judicial review, were recognized by this court in *Hays v. State*, 830 P.2d 783 (Alaska 1992). There we held that inmates have no cognizable interest in access to particular rehabilitation programs. *Id.* at 785. Petitioner Hays had been fired as a prison librarian because of his poor attitude and transferred to a position shoveling snow, where he would have less direct contact with others. *Id.* at 784. We recognized that the library position was a constitutionally protected form of rehabilitation, but nevertheless rejected the appeal because Hays "was not denied all rehabilitative opportunities." *Id.* at 785. In other words, DOC could exclude a prisoner from an actual reform program, so long as some appropriate form of

rehabilitation was provided. Implicit in this holding is that DOC has discretion to decide what type of rehabilitation is suited to the inmate.

*Hays* has particular significance for this case because there we made clear the flaw in Hays' claim was jurisdictional. *Id.* at 785. Although Hays had alleged he was removed from a reform opportunity, because prison authorities had discretion to determine which program was best for him, his grievance did not raise "an issue of constitutional magnitude." *Id.* We therefore affirmed the superior court's dismissal of Hays' administrative appeal for lack of subject matter jurisdiction. *Id.*

Finally, as noted at the outset, I would reject Brandon's effort to reformulate his transfer challenge as a constitutional rehabilitation claim. Allowing such a conversion eviscerates the holdings of our decisions in *Abraham* and *Rust*. If a prisoner's mere allegation that his placement interferes with his rehabilitation is enough to trigger judicial review, then all transfers may be reviewed by courts.

Movement of inmates raises many issues that can only properly be considered from the prison administrator's perspective. For this reason, I would hold that a prisoner seeking judicial review must establish in the DOC administrative appeals process that his rehabilitation claim rests on a factual basis other than the mere assertion that transfer or placement adversely affects visitation. A mere allegation that a transfer or placement decision of DOC adversely impacted visitation does not raise an issue of fundamental constitutional right requiring judicial review.[5]

One additional observation. The court notes that its recognition that "visitation privileges are a component of the constitu-

4. *See also Goodlataw v. State, Dep't of Health,* 698 P.2d 1190, 1193 (Alaska 1985) ("Rehabilitation implies a therapeutic program of working over a period of time to correct a complex problem.") (emphasis omitted); *LaBarbera v. State,* 598 P.2d 947, 949 (Alaska 1979) (judicial intervention is appropriate only when the state fails "to provide an appropriate rehabilitation program.").

5. I note that apart from any constitutional basis for review of DOC's transfer decision, no Alaska statute authorizes judicial review of Brandon's

complaint. The court relies on AS 33.30.061(b) to establish a link between transfer and the constitutional right to rehabilitation. Section .061(b) declares that an Alaskan prisoner may be moved to an out-of-state facility "only if the commissioner determines that rehabilitation or treatment of the prisoner will not be substantially impaired." While the section requires consideration of the impact of transfer, it vests this responsibility with DOC only. Nowhere does it authorize judicial review. Indeed, elsewhere the statute declares that "the commissioner shall

tional right to rehabilitation does not define their required scope or permissible limits on their exercise. Such definitions will have to be achieved in future adjudications." Given that prisoner visitation is now a component of the constitutional right to rehabilitation, it seems to me that the Department of Corrections, State of Alaska will necessarily encounter great difficulty in attempting to justify most out-of-state incarcerations, most incarcerations of rural Alaskans in urban facilities, and most incarcerations that encompass significant geographical dislocation (e.g., Fairbanks residents incarcerated in the correctional facility located in Seward). This is not to say that I view incarceration of prisoners in locations that will facilitate visitation inappropriate. On the contrary, I think such a development is a salutary one despite the significant fiscal implications which will flow from implementation of this constitutional right of prisoner visitation.

designate the correctional facility to which a prisoner is to be committed." AS 33.30.061(a). In *Rust*, 582 P.2d at 137–38, this language was interpreted to hold that all prisoner transfers are ultimately within the discretion of DOC.

*Rust* relied on this delegation of authority to dismiss a claim virtually identical to the one presented here. Petitioner Rust sought an order prohibiting his transfer out of Anchorage, where the presence of his family in Eagle River would "benefit his rehabilitation." *Id.* at 135. This court rejected the appeal. We found that placement of prisoners "is committed to the adminis-

trative discretion of the Division of Corrections," and "the exercise of that discretion within constitutional bounds is not subject to the control or review of the courts." *Id.* at 137, 138 n. 11 (quoting *Public Defender Agency v. Superior Court*, 534 P.2d 947, 950 (Alaska 1975)).

To the extent the court grounds its finding of jurisdiction in AS 33.30.061(b), it relies on that statute to create a remedy that it plainly does not authorize. I would adhere to our decision in *Rust* and hold there is no statutory basis for judicial review of prisoner transfer claims.