NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| RAYMOND C. KATCHATAG, ) | |
| ) | Supreme Court No. S-17432 |
| Appellant, ) | |
| ) | Superior Court No. 3AN-18-09306 CI |
| v. ) | |
| ) | MEMORANDUM OPINION |
| STATE OF ALASKA, DEPARTMENT ) | AND JUDGMENT* |
| OF CORRECTIONS, ) | |
| ) | No. 1800 – November 4, 2020 |
| Appellee. ) | |
| ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Jennifer Henderson, Judge.

Appearances: Raymond C. Katchatag, pro se, Seward, Appellant. Andalyn Pace, Assistant Attorney General, Anchorage, and Kevin G. Clarkson, Attorney General, Juneau, for Appellee.

Before: Bolger, Chief Justice, Maassen, and Carney, Justices. [Winfree, Justice, not participating.]

## I.     INTRODUCTION

The Alaska Department of Corrections removed an inmate assigned to administrative segregation from a program designed to help him achieve a lower security classification. The inmate appealed his removal in superior court, alleging that the department violated his due process rights. The superior court dismissed the inmate's

---

*     Entered under Alaska Appellate Rule 214.

appeal for lack of subject matter jurisdiction. Because we agree that the court did not have jurisdiction, we affirm.

## II.     FACTS AND PROCEEDINGS

Raymond Katchatag is an inmate in the custody of the Alaska Department of Corrections (DOC) at Spring Creek Correctional Center (SCCC). He was assigned to administrative segregation in AS-10,[1] "the most restrictive housing based on [his] behavior which represents a severe threat to the safety and security of the facility or to public safety," but was a participant in the "AS-10 Step-Down Program," completion of which would have permitted him to receive a lower security classification.

In May 2018 DOC provided Katchatag with notice of its intent to remove him from the Step-Down Program. Consistent with DOC policies and procedures, the notice informed Katchatag that he had a right to contest his removal from the program before a classification committee or hearing officer.[2] The notice also detailed the administrative appeals process in the event DOC moved forward with program termination: Katchatag could appeal the hearing officer's decision to the SCCC

---

[1]     22 Alaska Administrative Code (AAC) 05.485(a)(10) (2018). DOC may impose administrative segregation "if the continued presence of a prisoner in the general population would be a serious threat to life, property, self, staff, other prisoners, or the security or orderly administration of the facility." 22 AAC 05.660(a)(1).

[2]     *See* STATE OF ALASKA, DEP'T OF CORR., POLICIES & PROCEDURES 808.04 § VII (D) (2014) (hereinafter DOC POLICY 808.04), https://doc.alaska.gov/pnp/pdf/808.04.pdf.

superintendent.[3] He then could appeal the superintendent's decision to the DOC director of the Division of Institutions.[4]

Katchatag requested a hearing, which DOC held two days later. DOC documented a hearing on a two-page, multi-purpose form that DOC used for hearings of various types, including program termination hearings.[5] The hearing officer marked the hearing type as a "Program Termination Hearing" and recommended Katchatag's removal from the Step-Down Program, noting that Katchatag "would not [accept] responsibility for his actions." Katchatag acknowledged receipt of the decision and indicated next to his signature, "I want to appeal."

Katchatag claimed that DOC did not give him his requested appeal; he subsequently wrote to the Alaska Ombudsman, who replied that she did not have jurisdiction to consider the issue. Katchatag then filed an appeal in superior court, alleging that DOC had violated his constitutional due process rights.

DOC filed a motion to dismiss Katchatag's appeal for lack of appellate jurisdiction, arguing that the hearing was not an adjudicative proceeding and did not produce a record capable of review. Citing the lack of a sufficiently reviewable record, the superior court granted DOC's motion and dismissed the case. Katchatag now appeals.

---

[3]     *Id.*; 22 AAC 05.660(a)(35) (defining "superintendent").

[4]     DOC POLICY 808.04, *supra* note 2 § VII (D)(4)(d); 22 AAC 05.660(a)(38) (defining "director").

[5]     *See generally* STATE OF ALASKA, DEP'T OF CORR., POLICIES & PROCEDURES 700.01 (2014), https://doc.alaska.gov/pnp/pdf/700.01.pdf; STATE OF ALASKA, DEP'T OF CORR., RE-CLASSIFICATION/DESIGNATION FORM 700.01B (2014), https://doc.alaska.gov/pnp/pdf/700.01B.pdf.

## III. DISCUSSION[6]

### A. Katchatag's Appeal Is Not Dismissed For Lack Of Briefing.

DOC labels Katchatag's arguments on appeal as "conclusory" and contends that Katchatag has waived any argument "that the [s]uperior [c]ourt's dismissal order be reversed." We have held that "where a point is given only a cursory statement in the argument portion of a brief, the point will not be considered on appeal."[7] But we have also excused superficial briefing by pro se litigants when the essence of their arguments could be discerned from the briefs and the opposing party was not prejudiced by the inadequacy of the briefing.[8]

The argument section of Katchatag's brief focuses on a key substantive issue in this case: whether DOC violated his constitutional rights by failing to afford him sufficient due process at his program termination hearing. His emphasis on the lack of a recording at the hearing recognizes a critical aspect of the superior court's decision —

---

[6]     Determining the scope of superior court appellate jurisdiction requires interpretation of AS 22.10.020, to which this court applies its independent judgment. *Welton v. State, Dep't of Corr.*, 315 P.3d 1196, 1197 (Alaska 2014).

[7]     *Windel v. Carnahan*, 379 P.3d 971, 980 (Alaska 2016) (quoting *Burts v. Burts*, 266 P.3d 337, 344 (Alaska 2011)).

[8]     *Cf. Casciola v. F.S. Air Serv., Inc.*, 120 P.3d 1059, 1063 (Alaska 2005) (deeming one of pro se litigant's arguments waived but allowing two others because briefing allowed opponent and court to "discern the *pro se's* legal argument" (emphasis in original)); *Wilkerson v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 993 P.2d 1018, 1021-22 (Alaska 1999) (excusing conclusory briefing by pro se litigant who brought constitutional claims when relevant legal tests were "well established and could have been easily applied" by court and where State was not prejudiced by lack of sufficient briefing).

that the absence of a recording proved fatal to the court's ability to hear the case on jurisdictional grounds.

Moreover, when viewed in its entirety, Katchatag's brief allows DOC and this court to easily discern his argument. His statement of the case cites the key holding that the superior court relied on in dismissing his appeal, and he again focuses on the lack of a recording as a central issue. Katchatag's brief therefore makes it clear that he believes it was error for the superior court to dismiss his appeal for lack of jurisdiction and that his due process rights were violated.

DOC also does not appear confused about or unaware of the issues. Indeed, DOC fully briefs whether the superior court erred in dismissing Katchatag's appeal and whether DOC violated Katchatag's constitutional rights. As DOC was not prejudiced by lack of briefing, we choose to reach the merits of this appeal rather than dismissing it on a technicality.

**B.      The Superior Court Did Not Err By Dismissing Katchatag's Appeal For Lack Of Jurisdiction.**

The superior court held it did not have subject matter jurisdiction to hear Katchatag's appeal because "the inadequacy" of the "two-page paper record" precluded appellate review of DOC's actions. DOC argues that the superior court's dismissal was proper because the program termination hearing was not sufficiently adjudicative; the record was not capable of review; and there was no violation of Katchatag's constitutional rights.

Katchatag claims the *Cleary* Final Settlement Agreement (*Cleary* Settlement)[9] gives him a right to a tape-recorded hearing "if the purpose of the hearing

---

[9]      We summarized the factual history that led to the *Cleary* Settlement in
(continued...)

is consideration of assignment or continued assignment to administrative segregation," i.e. to reclassify him. But that was not the purpose of Katchatag's hearing, which was instead to consider his program termination.

Relatedly, Katchatag contends that had he not elected to have a program termination hearing, DOC could have terminated his participation in the Step-Down Program without violating his due process rights. But he argues that on form 808.04B, he "check[ed] the box for it to be a Re-Classification/Designation Hearing," entitling him to all due process rights associated with reclassification hearings. But that does not appear to be true. Katchatag's form indicated that by checking the box an inmate could "request [the] matter to be heard by the Classification Committee/Hearing Officer." The "matter" was stated on the form: "A determination has been made to remove you from the above named program for the reasons listed below." Thus, checking the box simply gave Katchatag a right to contest removal from the program as indicated on the notice; it did not alter the nature of the hearing from program termination to re-classification. Katchatag received the hearing he requested, and the hearing officer expressly marked the hearing type as a program termination hearing, not one related to re-classification.

---

[9]     (...continued)

*Smith v. Cleary*, 24 P.3d 1245 (Alaska 2001). Briefly, in 1981 a group of inmates challenged prison conditions in a class action suit brought against the State. *Id.* at 1246. The parties eventually settled, and their settlement agreement became a consent decree in the case. *Id.* We described the scope of the agreement in *Cleary* as follows: "[The agreement] included elaborate provisions for future operation of Alaska prisons, enumerated rights of inmates, guaranteed the availability of specific rehabilitative programs and services, required the state to implement an inmate classification system, created population guidelines, and established caps to eliminate overcrowding." *Id.* at 1247.

Alaska Statute 22.10.020(d) governs superior court appellate jurisdiction and states that "[t]he superior court has jurisdiction in all matters appealed to it from a[n] . . . administrative agency when appeal is provided by law." There are no statutory provisions giving inmates the right to appeal a DOC administrative decision.[10] Thus, the superior court has jurisdiction to hear such matters only when allowed by our decisions.

In *Brandon v. State, Department of Corrections*, we considered whether an inmate had a right to appeal DOC's decision following a re-classification hearing to transfer him to an out-of-state facility.[11] The inmate appealed DOC's decision in superior court, but the superior court dismissed the appeal for lack of jurisdiction.[12] After reviewing our prior decisions related to the matter, we reaffirmed that "the superior court has jurisdiction to hear an administrative appeal of a DOC action involving constitutional issues," and that DOC administrative decisions were therefore appealable "where there is an alleged violation of fundamental constitutional rights in an adjudicative proceeding producing a record capable of review."[13]

Applying the jurisdictional test from *Brandon* therefore requires us to analyze three issues: whether the DOC decision implicated Katchatag's constitutional rights, whether the program termination hearing was sufficiently adjudicative, and whether the record allowed for meaningful appellate review. We assume without deciding that Katchatag alleged a violation of his fundamental constitutional rights, satisfying the first prong of the *Brandon* test. But we agree that the superior court did

---

[10]     *Welton*, 315 P.3d at 1197.

[11]     938 P.2d 1029, 1030-31 (Alaska 1997).

[12]     *Id.* at 1031.

[13]     *Id.* at 1031-32.

not have jurisdiction to hear Katchatag's appeal because the program termination hearing was not sufficiently adjudicative and did not produce a record that allowed for meaningful appellate review.

### 1. The program termination hearing was not sufficiently adjudicative.

We described in *Brandon* aspects of an adjudicative proceeding:

> The essential elements of adjudication include adequate notice to persons to be bound by the adjudication, the parties' rights to present and rebut evidence and argument, a formulation of issues of law and fact in terms of specific parties and specific transactions, a rule of finality specifying the point in the proceeding when presentations end and a final decision is rendered, and any other procedural elements necessary for a conclusive determination of the matter in question.[14]

Some elements of the program termination hearing were adjudicative in nature. Katchatag received notice of his termination from the program. The decision "addresse[d] individual rather than general policy determinations."[15] But other elements of adjudication were apparently absent.[16] For example, as we highlighted in *Welton v. State, Department of Corrections* when considering a different DOC procedure, "[t]here

---

[14] *Id.* at 1032-33 (quoting *Johnson v. Alaska State Dep't of Fish & Game*, 836 P.2d 896, 908 n.17 (Alaska 1991)).

[15] *Id.* at 1033.

[16] We have previously found re-classification hearings to be adjudications. *Id.* DOC policy states that program termination hearings should be conducted "in accordance with Policy & Procedure 700.01 (Prisoner Classification)," suggesting that these proceedings might also be adjudicative in nature. DOC POLICY 808.04. However, this was not a re-classification hearing, and we accept the DOC's interpretation of its procedural rules.

was no burden of proof to be met nor legal elements to be proven."[17]  Furthermore, nothing in the administrative record indicates that other essential adjudicatory elements were present.  Based on the record before us, we cannot assume that the hearing constituted an adjudication.  We therefore conclude that the termination hearing was not sufficiently adjudicative to allow for appellate review.

> **2.      The administrative record was insufficient to allow meaningful appellate review.**

The administrative record in this case was incredibly thin.  It consisted of a two-page form, most of which was unrelated to the program termination hearing itself, and a one-page notice of hearing.  Section B of the hearing form documented Katchatag's "Custody Scoring."  This would be relevant only if the purpose of the hearing were re-classification to a different custody level.  Section C of the form documented the recommended classification based on the custody score and included a space for the hearing officer to specify reasons for overriding that recommendation.  But Katchatag did not receive a re-classification hearing.  His hearing pertained to termination from the AS-10 Step-Down Program.  As such, most of the information contained on his hearing form was irrelevant.

The only part of the form that pertained to program termination was a small portion of Section C where the hearing officer documented Katchatag's comments and the hearing officer's recommendations on removal from the program.  This information does not allow for meaningful appellate review.  Katchatag does not contest any aspect of the hearing beyond the paper-only nature of the record itself.  But had he alleged specific legal or procedural errors, a court would be unable to review the hearing officer's actions based on this record.

---

[17]      315 P.3d 1196, 1198 (Alaska 2014).

## IV. CONCLUSION

We AFFIRM the superior court's decision dismissing Katchatag's appeal for lack of subject matter jurisdiction.[18]

---

[18] Katchatag also alleged three violations of his due process rights, which the superior court did not substantively address when it dismissed his appeal. The superior court did not err by declining to address these arguments because it did not have subject matter jurisdiction to hear Katchatag's appeal. We also decline to address them. But this does not mean that Katchatag has no recourse: we assume that he can file an independent claim seeking relief for these alleged due process violations.