NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| PATRICK H. TORRENCE, ) | |
| ) | Supreme Court No. S-17750 |
| Appellant, ) | |
| ) | Superior Court No. 3AN-19-10345 CI |
| v. ) | |
| ) | MEMORANDUM OPINION |
| STATE OF ALASKA, DEPARTMENT ) | AND JUDGMENT* |
| OF CORRECTIONS, ) | |
| ) | No. 1843 – August 25, 2021 |
| Appellee. ) | |
| ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Josie Garton, Judge.

Appearances: Patrick H. Torrence, pro se, Seward, Appellant. Andalyn Pace, Assistant Attorney General, Anchorage, and Clyde "Ed" Sniffen, Jr., Acting Attorney General, Juneau, for Appellee.

Before: Bolger, Chief Justice, Winfree, and Maassen, Justices. [Carney and Borghesan, Justices, not participating.]

## I. INTRODUCTION

An inmate alleges that he was attacked in his cell; the Department of Corrections (DOC) characterized the incident as mutual combat and moved the inmate to administrative segregation for safety reasons. The inmate filed two grievances alleging that DOC staff members were involved in the alleged attack. The grievances

---

\*      Entered under Alaska Appellate Rule 214.

were denied at each administrative level. The inmate then filed an appeal in superior court, claiming violations of his constitutional rights and seeking damages for his time spent in administrative segregation.

The superior court dismissed the appeal on DOC's motion. The court reasoned that it lacked appellate jurisdiction over prisoner grievance decisions and that the inmate had failed to exhaust the available administrative remedies for challenging his placement in administrative segregation. We conclude that the superior court did not err or abuse its discretion, and we therefore affirm its decision.

## II.    FACTS AND PROCEEDINGS

Patrick Torrence was an inmate at Spring Creek Correctional Center. According to a DOC incident report, a fellow inmate entered Torrence's cell one day in July 2019 and the two men "engaged in a physical altercation." Torrence calls the incident an "organized assault" carried out by gang members and facilitated by DOC staff. DOC initially characterized the incident as "mutual combat" for which Torrence could be disciplined, but it ultimately did not pursue disciplinary action against him. DOC did, however, immediately transfer Torrence to administrative segregation, explaining on the admission form that he "[p]resent[ed] a substantial and immediate threat to the security of the facility or public safety."

DOC held a hearing on the placement three days later. The hearing officer concluded that Torrence should remain in administrative segregation, citing Torrence's own perception "that the issue that precipitated the incident is not resolved and will likely happen again if he is in [the general prison population]" and finding that "[t]he likelihood of such violence presents a threat to the safety, security, and orderly operation of the facility."

Torrence ultimately remained in administrative segregation for more than 50 days. During that time he filed two prisoner grievances. The grievances did not

challenge his placement in administrative segregation; the relief they demanded was a full investigation of his allegations that DOC staff helped orchestrate the assault.

In August 2019 DOC responded to Torrence's second prisoner grievance with a Grievance Screening form finding the grievance deficient because it simply repeated the information in Torrence's first grievance, which was still under investigation. Torrence filed a Request for Interview form the same day, writing that he had not been given a copy of his first filing and that he feared "foul play" might be involved in its disappearance. But apparently having received a copy of his first grievance, Torrence wrote that he "agree[d] with the screening" that terminated proceedings on his second one.

DOC denied Torrence's first grievance in September 2019. The investigator reported that he could not find any evidence supporting Torrence's allegations that prison staff were involved in the assault. Torrence appealed, reiterating his conspiracy claims and alleging that they "went uninvestigated to protect the officers involved." He followed up with several Request for Interview forms making further allegations about staff complicity in the assault and asking that he be given "[a]ppeal paperwork to the Commissioner." A DOC employee responded to Torrence's paperwork request by referring him to the appropriate section of the DOC Policies and Procedures.[1]

Torrence filed his superior court appeal in September 2019. He alleged that DOC had denied him "fair and impartial due process" and equal protection, that DOC had "fail[ed] to hold the perpetrators [of the assault against him] legally accountable civilly and criminally," that DOC's conclusion that the assault had involved "mutual combat" was not supported by the evidence, that he had lost 53 days of liberty as a result

---

[1] *See* State of Alaska, Dep't of Corr., Policies & Procedures 808.03 (2006), https://doc.alaska.gov/pnp/pdf/808.03.pdf (describing procedures for grievance appeals).

of DOC's failures, and that he was entitled to damages of "$1800.00 per day for improper isolation."

DOC moved to dismiss the case on two grounds: lack of jurisdiction and failure to exhaust administrative remedies. The superior court agreed with both arguments and granted DOC's motion. Torrence appeals.

## III. STANDARDS OF REVIEW

"Whether the superior court has subject matter jurisdiction to hear an appeal from an administrative decision is a question of law, which we review de novo."[2] "Whether a type of claim generally requires exhaustion of administrative remedies is a legal question that we review de novo. We review for abuse of discretion a superior court's determination of whether a plaintiff exhausted those remedies or whether the failure to exhaust should be excused."[3] "We will find an abuse of discretion when the decision on review is manifestly unreasonable."[4]

## IV. DISCUSSION

Three DOC decisions are at issue: the denials of Torrence's two grievances and the decision to place him in administrative segregation. Grievance denials[5] and

---

[2]     *Osborne v. State, Dep't of Corr.*, 332 P.3d 1286, 1287 (Alaska 2014).

[3]     *Winterrowd v. State, Dep't of Admin., Div. of Motor Vehicles*, 288 P.3d 446, 449 (Alaska 2012) (quoting *Smart v. State, Dep't of Health & Soc. Servs.*, 237 P.3d 1010, 1014 (Alaska 2010)).

[4]     *Sykes v. Lawless*, 474 P.3d 636, 646 (Alaska 2020) (quoting *Erica G. v. Taylor Taxi, Inc.*, 357 P.3d 783, 786-87 (Alaska 2015)).

[5]     *See* 22 Alaska Administrative Code (AAC) 05.185 (2021) ("A prisoner is entitled to appeal the decision [concerning a prisoner grievance] to the regional director on a form and in accordance with procedures approved by the commissioner."); State of Alaska, Dep't of Corr., Policies & Procedures 808.03 (2006) (describing procedures for
(continued...)

classification decisions[6] are both appealable, though by different routes.[7] And the superior courts' appellate jurisdiction is not the same in each instance, as is further discussed below. We conclude that the superior court properly determined that it lacked appellate jurisdiction over the grievances and that Torrence failed to exhaust the available DOC review process for the classification decision placing him in administrative segregation.

### A. The Superior Court Correctly Decided That It Lacked Appellate Jurisdiction To Hear The Grievance Appeals.

The superior court dismissed Torrence's two grievance appeals for lack of appellate jurisdiction. We explained in *Welton v. State, Department of Corrections*, why appellate review is generally unavailable in such cases, contrasting "[t]he essential

---

[5]      (...continued)
grievance appeals).

[6]      *See* 22 AAC 05.485(d) (requiring "a classification hearing as soon as possible, but no later than three working days after placement in administrative segregation"); 22 AAC 05.242 (describing appeal procedures for classification decisions); 22 AAC 05.495 (setting "time frames" for appeals of administrative segregation); State of Alaska, Dep't of Corr., Policies & Procedures 804.01(VII)(E) (2014), https://doc.alaska.gov/pnp/pdf/804.01.pdf (allowing five days for prisoner to appeal administrative segregation decisions).

[7]      Prison discipline decisions are also appealable. *See* 22 AAC 05.480 (describing procedure for "[a]ppeal[s] from disciplinary decisions"). Torrence asserts that his administrative segregation was in fact punishment for the charge of mutual combat — a violation of the DOC disciplinary rules, *see* 22 AAC 05.400(c)(1) (2021) — but that when DOC dropped the disciplinary charge it left him without an effective forum for litigating his claims about conspiracy and unlawful administrative segregation. But Torrence raised these claims in the context of his grievances and classification, which both provide appellate processes. And as we have noted, the lack of an appellate remedy does not foreclose independent civil actions for damages. *See Welton v. State, Dep't of Corr.*, 315 P.3d 1196, 1199 (Alaska 2014).

elements of adjudication" necessary for appellate review to DOC's grievance proceedings.[8]

> The essential elements of adjudication include adequate notice to persons to be bound by the adjudication, the parties' rights to present and rebut evidence and argument, a formulation of issues of law and fact in terms of specific parties and specific transactions, a rule of finality specifying the point in the proceeding when presentations end and a final decision is rendered, and any other procedural elements necessary for a conclusive determination of the matter in question.[9]

These "essential elements" do not appear in DOC's grievance proceedings, in which

> there [is] no hearing or similar proceeding at which the parties [can] "present and rebut evidence and argument." Neither party [has] the opportunity to examine witnesses, and the grievance process [does] not involve the "formulation of issues of law and fact." There [is] no burden of proof to be met nor legal elements to be proven. The grievance proceedings provide for nothing more than a paper record of [DOC's] "efforts to resolve issues at the lowest possible level."[10]

Because "the limited paper record produced by the DOC's informal grievance process is inadequate for appellate review" and "the grievance process itself lacks several important hallmarks of an adjudication," we have repeatedly concluded that "an administrative appeal will provide inadequate process for" a prisoner's claims that

---

**8** 315 P.3d at 1198 (quoting *Brandon v. State, Dep't of Corr.*, 938 P.2d 1029, 1032-33 (Alaska 1997)).

**9** *Id.* (quoting *Brandon*, 938 P.2d at 1032).

**10** *Id.* (footnotes omitted) (twice quoting *Brandon*, 938 P.2d at 1032-33; then quoting State of Alaska, Dep't of Corr., Policies & Procedures 808.03 (2006).

have gone through the DOC grievance process.[11] The superior court was therefore correct to rule that it lacked appellate jurisdiction to hear Torrence's grievance appeals.

However, as we observed in *Welton*, the lack of a right to a judicial appeal as part of the DOC grievance process "simply recognizes that the [appellate] record is inadequate to support meaningful appellate review"; it does not mean that a prisoner is foreclosed from pursuing the same claims by other avenues.[12] We assumed in *Welton* that the prisoner could "file an independent civil action requesting the same relief she requests in these [administrative appeals]" and that in such an action "both parties [would] have the right to a full and fair hearing on [the prisoner's] claims."[13] Whether an independent civil action would be viable on the facts Torrence alleges is not before us.

**B. The Superior Court Did Not Abuse Its Discretion By Finding That Torrence Did Not Exhaust The Available Administrative Remedies For Review Of The Classification Decision.**

A prisoner's placement in administrative segregation falls within the category of classification decisions.[14] Classification decisions, unlike grievances, follow

---

[11] *Id.* at 1199; *see also Osborne v. State, Dep't of Corr.*, 332 P.3d 1286, 1290 (Alaska 2014) (observing that "reviewing a non-adjudicative proceeding that produced an inadequate record would create an unacceptable risk of violating a prisoner's fundamental constitutional rights").

[12] 315 P.3d at 1199.

[13] *Id.*; *see also Osborne*, 332 P.3d at 1290 (observing that prisoner who failed to successfully challenge his sentence calculation through the DOC grievance process was "not precluded from challenging his sentence calculation in the superior court through an application for post-conviction relief").

[14] *See* 22 AAC 05.485(d) (describing prisoner's right to classification hearing following placement in administrative segregation); 22 AAC 05.485(e) (describing
(continued...)

an administrative hearing process that we have held "is an adjudication and produces a record adequate for review."[15] The superior court therefore has appellate jurisdiction to review them.[16]

In this case, however, the superior court held that Torrence had failed to exhaust his administrative remedies before filing his appeal. The regulations governing administrative segregation provide that, following a classification hearing, a written report must be submitted to the superintendent for "review and action."[17] "[I]f the decision is for continued administrative segregation," the prisoner must be given "a description of the appeal process," and "[f]orms to facilitate an appeal must be provided upon request."[18]

The superior court found that Torrence never attempted to use this classification decision appeal process. According to the DOC Policies and Procedures,[19] Torrence had five days to appeal the superintendent's classification decision once he was placed in administrative segregation. But he never appealed the placement; he focused instead on the grievance process, which he used to pursue his claims that prison staff had facilitated the alleged assault. The superior court observed that while "Torrence filed a grievance . . . alleging that [prison] staff colluded with the Native Brotherhood to permit

---

[14]    (...continued)
classification committee's duty to prepare written report of classification action).

[15]    *Brandon*, 938 P.2d at 1033.

[16]    *Id.*

[17]    22 AAC 05.485(e).

[18]    *Id.*

[19]    *See* State of Alaska, Dep't of Corr., Policies & Procedures 804.01(VII)(E) (2014).

an assault on him," he never directly challenged his placement in administrative segregation.[20] The record of his first hearing, in fact, indicates that he believed the assault would be repeated if he was returned to the general population. The superior court concluded that "[w]ithout any evidence that Torrence appealed his placement in administrative segregation through the procedures described in DOC [Policies and Procedures] 804.01 Torrence has failed to exhaust the administrative remedies available to him before filing [an] appeal with the Superior Court." The superior court's finding that Torrence failed to appeal the classification decision is supported by the record and not clearly erroneous.

Torrence also argues that DOC failed to give him the proper paperwork to appeal the placement decision and that this was a violation of his due process rights. He cites *Brown-El v. Delo*, a federal case holding that prisoners have due process rights to appropriate notice and hearing whenever they are placed in segregation regardless of whether segregation is defined as administrative or punitive.[21] He contends that when DOC failed to provide the proper form, he used a Request For Interview form instead, doing the best he could with the paperwork he had. But the one time Torrence requested "[a]ppeal paperwork," it was in relation to a grievance appeal, not his classification, and DOC understandably responded by directing him to the Policies and Procedures section governing grievance appeals.

---

[20] Torrence did complain about having "spent 52 days in segregation inappropriately" in his third Request for Interview, but he used this form to seek "a response [to his] grievance appeal to the Director of Institutions." A prisoner may not use the grievance process to appeal classification decisions. *See* 22 AAC 05.185(a) ("[M]atters concerning classification and discipline . . . may not be the subject of a grievance under this section, but may only be raised through an appeal of a classification or disciplinary action.").

[21] 969 F.2d 644, 648-49 (8th Cir. 1992).

Finally, we note that this last argument — that Torrence was not given the appropriate paperwork to appeal the classification decision — is raised for the first time on this appeal. "Arguments raised for the first time on appeal are generally waived."[22] And regardless of whether it is waived on appeal, the superior court cannot have abused its discretion by failing to consider an argument that Torrence did not make in that forum. We conclude that the superior court did not abuse its discretion by determining that Torrence failed to exhaust his available administrative remedies for appealing the classification decision that placed him in administrative segregation.

## V.   CONCLUSION

We AFFIRM the superior court's decision of Torrence's appeal.

---

[22]   *Adkins v. Collens,* 444 P.3d 187, 195 (Alaska 2019).