**BETHEL UTILITIES CORPORATION, Appellant,**

v.

**CITY OF BETHEL, Appellee.**

**No. S–2839.**

Supreme Court of Alaska.

Sept. 29, 1989.

Victor C. Krumm, Law Office of Victor C. Krumm, Anchorage, for appellant.

Brooks W. Chandler and Leonard H. Herzog, Hicks, Boyd, Chandler & Falconer, Anchorage, for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

OPINION

COMPTON, Justice.

Bethel Utilities Corporation (BUC) filed an original action in the superior court against the City of Bethel (City), seeking a sales tax exemption and a refund of sales tax paid between 1980 and 1986. The trial court granted the City's motion for summary judgment. BUC appeals the dismissal of its suit, asserting that it was entitled to maintain the original action, or if not, that it was properly appealing the City's denial of its claim for an exemption and refund of taxes paid since April 1986. BUC also appeals the trial court's award of attorney fees to the City.

**20.** 750 P.2d at 821.

## I. FACTUAL AND PROCEDURAL BACKGROUND

BUC is a privately owned Alaska corporation providing electricity to the City. BUC generates electricity by burning fuel oil.

The City is a second class general law municipality with a city manager form of government. Pursuant to the authority granted to second class cities by AS 29.45.-700, the City levies a sales tax on sales made within the city. The City's sales tax ordinance exempts certain sales from its tax. Bethel Municipal Code (hereinafter B.M.C.) 4.16.030.[1] Applications for exemptions and refunds must be made to the city manager. B.M.C. 04.16.040, 04.16.050.

The City taxes BUC's purchases of fuel oil from Hoffman Fuel Services (Hoffman). In 1977 BUC's president requested a sales tax exemption from the City. The then city manager responded to BUC's request by stating that in his opinion taxes were due. He also advised BUC that further inquiries should be channeled through its legal counsel.

In February 1978 BUC's counsel sent two letters to the City setting out its claim for an exemption. BUC claimed exemptions under provisions of the ordinance exempting manufacturers and contractors and products purchased for resale.[2] B.M.C. 4.16.030(L), B.M.C. 4.16.030(R).[3]

The City informed BUC that applications for exemptions and refunds were to be submitted on prepared forms as required by the ordinance. B.M.C. 4.16.050. The city manager then informed BUC that the

forms did not exist. He also informed BUC that the exemption had been denied by the Bethel City Council. BUC acknowledged the denial in a letter dated April 19, 1978. BUC did not appeal this decision.

On May 2, 1986, BUC again wrote the City, requesting a refund and the appropriate application forms. In addition to the exemptions claimed in 1977, BUC claimed an exemption for single sales over $10,000. B.M.C. 4.16.030(P).[4] BUC sought a refund of $615,906 for sales tax paid during the preceding six years.

In June the City wrote BUC, indicating that the refund request would not be acted upon until a new city attorney was hired. No mention was made of the prepared forms required by the ordinance nor were forms provided by the City. BUC had no further communications with the City regarding its request.

BUC filed suit in September 1986. It sought exemptions and refunds under the three theories it had advanced to the City. BUC's suit was filed as an original action seeking refund of taxes paid since 1980.

In February 1987 the City answered BUC's complaint, asserting several affirmative defenses including failure to exhaust administrative remedies, failure to follow the B.M.C. procedural prerequisites, and failure to state a claim upon which relief could be granted.

Late in 1987 the City provided BUC with forms for exemptions and refunds under B.M.C. 4.16.030(L) (manufacturers and contractors exemption) and B.M.C. 4.16.030(R)

---

**1.** Originally, the sales tax exemptions were codified at B.M.C. 3.04.030. They have been renumbered and are now codified at B.M.C. 4.16.030. The exemptions at issue here read as follows:

    L. Manufacturers and Contractors. A sale to a manufacturer or contractor is exempt if the article becomes a physical part of a manufactured product or structure which when sold is subject to this tax. "Physical part of a manufactured product or structure" means that the article must be easily and readily identifiable in the manufactured article or structure, as the case may be.

    . . . .

    P. Over Ten Thousand Dollars. That portion of a selling price for a single piece of equipment or sale unit in excess of ten thou-

sand dollars is exempt. A single sale unit includes any retail sale where the selling price is separately computed or totaled on any delivery invoices or sales slip.

    . . . .

    R. Resale. A sale for resale of a product, service or rental, to a consumer where the resale is subject to tax is exempt.
B.M.C. 4.16.030.

**2.** BUC is required to charge its customers sales tax on sales of electricity.

**3.** See *supra* note 1.

**4.** See *supra* note 1.

(resale exemption). Forms were not provided for exemptions and refunds under B.M.C. 4.16.030(P) (single unit sale over $10,000). BUC "promptly applied" to the City on the forms provided.

The City did not respond to BUC's application. Instead, in March 1988 the City moved for summary judgment. In its memorandum in support of summary judgment, the City argued that BUC could not maintain an original action, BUC was not the real party in interest, and BUC did not qualify for the claimed exemptions. The City presumed that BUC's suit was a proper appeal of the City's "apparent denial" of BUC's May 1986 refund request, thereby limiting BUC to a refund of taxes paid since April 1986.

In its opposition to the City's motion, BUC admitted that partial summary judgment could be entered against it on its claim for a refund under the resale exemption. B.M.C. 4.16.030(R). BUC moved for summary judgment on the issues of the manufacturers exemption and $10,000 single sales exemption. B.M.C. 4.16.030(L); B.M.C. 4.16.030(P).

After argument the trial court issued an oral decision dismissing BUC's suit. It held that our decision in *FedPac International, Inc. v. State, Department of Revenue*, 646 P.2d 240 (Alaska 1982), was dispositive. The trial court concluded that *FedPac* barred an original action for a tax refund when an administrative procedure was provided. BUC then moved for reconsideration. The motion was denied. In its order dismissing the suit, the trial court reiterated its conclusion that *FedPac* required BUC to follow the City's procedure.

The City then moved for and was granted attorney fees and costs under Alaska Civil Rule 82.

BUC timely appealed the dismissal of its suit and the award of attorney fees and costs to the City.

## II. DISCUSSION

In order to be entitled to summary judgment, the moving party must establish that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Wickwire v. McFadden*, 576 P.2d 986, 987 (Alaska 1978). The availability of a common law assumpsit remedy in this case is a question of law. On questions of law, this court substitutes its judgment for that of the trial court. *Borkowski v. Snowden*, 665 P.2d 22, 27 (Alaska 1983).

### A. THE TRIAL COURT DID NOT ERR WHEN IT DISMISSED BUC'S ORIGINAL ACTION FOR A TAX REFUND.

BUC argues that it is entitled to maintain an original action to recover overpaid taxes. BUC premises its argument on our decision in *State v. Wakefield Fisheries, Inc.*, 495 P.2d 166 (Alaska 1972). It contends that *FedPac* and *Wakefield* recognize a common law action for the recovery of overpaid taxes when statutory remedies do not explicitly supersede common law remedies.

In *Wakefield* we allowed an aggrieved taxpayer to maintain an original civil action to recover tax overpayments. *Wakefield*, 495 P.2d at 172. The statute at issue was AS 43.15.010. That statute does not prescribe an administrative procedure to be followed by an aggrieved taxpayer.[5]

Although the statute did not explicitly authorize an original action, it did contemplate one. The statute clearly allows the taxpayer a refund if the taxpayer "recov-

---

5. AS 43.15.010 provides in part:

Recovery of overpayments and protested payments. (a) The Department of Administration shall, with the approval of the attorney general and the Department of Revenue, refund to a taxpayer the amount of a tax paid to the Department of Revenue under protest and deposited in the treasury if (1) the taxpayer recovers judgment against the Department of Revenue for the return of the tax, or (2) in the

absence of a judgment, it is obvious to the Department of Revenue that the taxpayer would obtain judgment if legal proceedings were prosecuted by the taxpayer.

(b) The Department of Administration shall refund the amount of an overpayment to a taxpayer if the Department of Revenue, on audit of the account in question, determines that a remittance by the taxpayer exceeds the amount due.

ers judgment against the Department of Revenue." *See supra* note 5. The only administrative requirement under the statute was that the tax be paid under protest.

We concluded that the statutory remedies in AS 43.15.010 supplemented common law remedies available to aggrieved taxpayers. *Wakefield*, 495 P.2d at 172. This conclusion was reached "[b]ecause the statutory remedies [did] not explicitly supersede the common law remedies." *Id.* Insofar as *Wakefield* allowed an action for recovery of taxes without following the statutory requirement that the taxes be paid under protest, it has been overruled. *Principal Mutual Life Ins. Co. v. State*, 780 P.2d 1023, 1030 (Alaska, 1989).

We again addressed the availability of an original action to recover tax overpayments in *FedPac*. AS 43.05.240 was at issue.[6] *FedPac*, 646 P.2d at 241. That statute prescribed a "detailed procedure to be followed by an aggrieved taxpayer." *Id.* The statute did not mention the availability of common law remedies. *See supra* note 6. Based on the explicit procedural remedy and the absence of common law remedies,

we concluded that the statute was intended to foreclose original civil actions. *FedPac*, 646 P.2d at 241.

■ The ordinances at issue in this case prescribe a procedure that must be followed. B.M.C. 4.16.040; B.M.C. 4.16.050. The B.M.C. requires that exemption and refund applications be filed with the city manager. B.M.C. 4.16.040(C); B.M.C. 4.16.050(C). The city manager then determines whether the application will be approved. *See* B.M.C. 4.16.040; B.M.C. 4.16.-050. If the application is denied, the aggrieved taxpayer can appeal to the Bethel City Council. B.M.C. 2.04.170.[7] Like the statute in *FedPac*, the ordinances here do not contemplate an original action. *See* B.M.C. 4.16.040; B.M.C. 4.16.050. We conclude that the trial court correctly granted summary judgment to the City on this issue. The ordinances clearly do not contemplate an original action. Although the ordinances speak inartfully, they do provide an administrative procedure to be followed.

■ Alternatively, BUC argues that its case cannot reach the superior court on appeal, and that it should therefore be per-

---

6. AS 43.05.240 reads as follows:

Taxpayer remedies. (a) A person aggrieved by the action of the department in fixing the amount of a tax or in imposing a penalty may apply to the department within 60 days from the date of mailing the notice required to be given to the person by the department, giving notice of the grievance, and requesting an informal conference. At the conference the person aggrieved may present arguments and evidence relevant to the amount of tax or penalty due the state. If the department determines that a correction is warranted, the department shall make the correction.

(b) A person aggrieved by the action of the department in fixing the amount of a tax or in imposing a penalty may apply to the department and request a formal hearing

(1) in place of the informal conference provided for in (a) of this section, within 60 days from the date of mailing the notice required to be given to the person by the department; or

(2) within 30 days after decision resulting from an informal conference.

(c) At the formal hearing the department may subpoena witnesses and may administer oaths and make inquiries necessary to determine the amount of the tax or penalty due the state. The person aggrieved may present arguments and evidence relevant to the amount

of the tax or penalty due the state. If the department determines that a correction is warranted, the department shall make the correction.

(d) Within 30 days after the formal hearing and decision by the department, a person aggrieved by the decision of the department may appeal to the superior court in the judicial district in which the person resides. The taxpayer shall be given access to the file of the department in the matter for preparation of the appeal. If after the appeal is heard it appears that the tax was correct, the court shall confirm the tax. If incorrct, the court shall determine the amount of the tax and if the person aggrieved is entitled to recover the tax or part of it, the court shall order the repayment and the department shall immediately pay the amount due and attach a certified copy of the judgment to the payment.

7. B.M.C. 2.04.170 provides:

BOARD OF ADJUSTMENTS OR GRIEVANCE. The council as a board of adjustments or grievance in any City matter may proceed as such board without resolution. The clerk need not record the details of such proceedings, but merely note the general contention asserted and record in the minutes the final public action of the Board. Final action in each such case shall be by roll call vote.

mitted to bring its case as an original action. BUC contends that Alaska Appellate Rule 601 authorizes appeals to the superior court only to the extent provided by AS 22.10.020(d).[8] It reasons that under AS 22.10.020(d), the superior court only has appellate jurisdiction over agency decisions when "appeal is provided by law." AS 22.10.020(d). BUC argues that because the B.M.C. does not specifically provide for an appeal to the superior court, the superior court has no jurisdiction and the appellate rules do not apply. Thus, BUC concludes that it is entitled to maintain an original action.

This argument is unpersuasive. Unless the legislature provides otherwise, administrative decisions are presumed to be judicially reviewable. 5 K. Davis, *Administrative Law* §§ 28.1; 28.4 (2d ed. 1984).[9] Here, the Bethel City Council has not precluded judicial review. Therefore, the law does provide for appeals from the city council's administrative decisions. Thus, the appellate rules apply to BUC's exemption and refund request.

Based on the above, the trial court did not err in dismissing BUC's original action. "If the appellate rules apply, relief may be sought only in an appellate action." *Fed-Pac*, 646 P.2d at 241. Thus, BUC must follow the exclusive appeals procedure provided in the B.M.C. and the appellate rules.

**B. THE TRIAL COURT ERRED WHEN IT DISMISSED BUC'S CLAIMS FOR REFUND OF TAXES PAID AFTER APRIL 2, 1986.**

■ BUC argues that because the City conceded in the trial court that BUC's suit could be treated as a proper appeal of the City's apparent denial of its refund request, the trial court should have treated its suit as an appeal. Before the trial court, the City stated that since May 1986

BUC had not failed to exhaust its administrative remedies and contended that any relief due BUC only related back to April 1986.

Before this court the City argues that the trial court could dismiss claims made before and after April 1986. It reasons that a court can *sua sponte* decide whether it has jurisdiction to hear a claim. Thus, it concludes that the trial court could dismiss post-April 1986 claims as a matter of law.

This argument lacks merit. The issue is not the court's power to decide whether it has jurisdiction but whether it is proper to dismiss a case when it has jurisdiction. The City clearly conceded that post-April 1986 claims were properly before the trial court as an appeal of a final agency decision. The trial court clearly had jurisdiction over these claims. AS 22.10.020(d); Alaska R.App.P. 601.

Based on the City's concessions it is clear the trial court erred. The party moving for summary judgment must show that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Wickwire*, 576 P.2d at 987. The trial court's complete dismissal of BUC's suit disregarded the City's concession that BUC's suit was a proper appeal of an administrative decision. Thus, BUC is entitled to have its claim for an exemption and refunds arising after April 1986 heard as an appeal.

**C. THE TRIAL COURT ERRONEOUSLY AWARDED THE CITY RULE 82 ATTORNEY FEES.**

■ BUC contends that the award of attorney fees to the City was manifestly unreasonable in light of the court's limited ruling. BUC reasons that only a small portion of the City attorney's time was devoted to the issue upon which the trial

**8.** AS 22.10.020(d) reads as follows:
The superior court has jurisdiction in all matters appealed to it from a subordinate court, or administrative agency when appeal is provided by law. The hearings on appeal from a final order or judgment of a subordinate court or administrative agency shall be on the record unless the superior court, in its discretion, grants a trial de novo, in whole or in part.

**9.** Clearly, the city council acts as an administrative agency when it hears appeals from the city manager's decisions regarding tax exemptions and refunds. *See Winegardner v. Greater Anchorage Area Borough*, 534 P.2d 541, 544–45 (Alaska 1975).

court ultimately disposed of this case. BUC concludes that the City could only be awarded attorney fees based upon the time spent on the dispositive issues. This argument is without merit. We do not require the trial court to award attorney fees based upon the time spent on dispositive issues.

The trial court's award of attorney fees will only be interfered with when it is manifestly unreasonable. *Alaska Placer Co. v. Lee*, 553 P.2d 54, 63 (Alaska 1976). We conclude that it is manifestly unreasonable that the trial court awarded the City $25,000 in attorney fees without any documentation. The trial court relied exclusively on the City attorney's conclusory affidavit, stating that in excess of $35,000 had been spent defending this suit.[10] Thus, the issue of attorney fees is remanded to the trial court.

### III.  CONCLUSION

Based upon the foregoing, we AFFIRM the trial court's dismissal of BUC's original action for a tax refund. We REVERSE the trial court's dismissal of BUC's claim for taxes paid since April 1986 and REMAND this issue to the trial court. We REMAND the award of attorney fees for redetermination consistent with documentation supporting the number of hours claimed, and reconsideration of whether the City is the prevailing party, in light of our partial reversal.

---

**10.** The City's attorney furnished the trial court with documentation one week after the award of attorney fees was made.