*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| GREGORY SMITH, | ) | |
| | ) | Supreme Court No. S-18710 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-22-06805 CI |
| v. | ) | |
| | ) | O P I N I O N |
| MUNICIPALITY OF ANCHORAGE, | ) | |
| | ) | No. 7767 – May 9, 2025 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Herman G. Walker, Jr., Judge.

Appearances: Gregory Smith, pro se, Anchorage, Appellant. Jessica B. Willoughby, Assistant Municipal Attorney, and Anne R. Helzer, Municipal Attorney, Anchorage, for Appellee. Melody Vidmar and Eric Glatt, Anchorage, for Amicus Curiae ACLU Alaska Foundation.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

MAASSEN, Chief Justice.

## I. INTRODUCTION

Municipal ordinances outline a procedure for "campsite abatement" — the removal of unauthorized campsites from public property following posted notice of the decision that they are subject to abatement. Part of that procedure is an appeal to the superior court.

The superior court in this case determined that its appellate jurisdiction was limited by ordinance to the issue of whether the posted notice of abatement was legally sufficient and did not permit it to decide whether the abatement itself was proper. We conclude that the superior court's jurisdiction is not so limited. We therefore reverse its decision and remand for further consideration of the constitutional challenges to abatement raised on appeal. We also direct the court on remand to determine whether the administrative record is sufficient for purposes of meaningful appellate review and, if it is not, to take the necessary steps to ensure that it has such a record.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

The Anchorage Municipal Code (AMC) identifies "prohibited campsites" as public nuisances and provides a detailed set of procedures the Municipality can use to address them.[1] In all cases, notice of an impending abatement must be posted before the physical removal of people and property may begin.[2] There are four different notice periods:  24 hours for wildfire danger areas,[3] 72 hours for campsites near protected land uses like trails and playgrounds,[4] ten days for "zone abatements" (when the Municipality simultaneously abates all campsites within a contiguous area),[5] and 15 days for most other campsites.[6] The abatement procedure specifies that an appeal to the superior court may be taken "within 30 days from the date the notice of campsite abatement is posted, in accordance with the Alaska court rules."[7]

---

[1]    AMC 15.20.020(B)(15) (2023).

[2]    AMC 15.20.020(B)(15)(a).

[3]    AMC 15.20.020(B)(15)(b)(i).

[4]    AMC 15.20.020(B)(15)(b)(ii).

[5]    AMC 15.20.020(B)(15)(b)(v).

[6]    AMC 15.20.020(B)(15)(b)(iv).

[7]    AMC 15.20.020(B)(15)(e) (2019).

In June 2022 the Municipality posted a "Notice of Zone Campsite Abatement/Clean Up" in Davis Park.[8] The notice advised that "[t]his is not a legal area for storage or shelter" and that "[a]ny personal property in or around this zone at the end of 10 days shall be removed and disposed of as waste." It gave a telephone number for "outreach and housing support," explained the Municipality's policies for storage of personal property removed from the site, and described available appeal rights. Ten days after the notice date, six individuals filed an appeal of the abatement in superior court.

## B. Proceedings

In their appeal, the individuals argued that the abatement violated due process because it allowed the Municipality to seize personal property without an opportunity for a hearing (or, in fact, "any proceedings of any kind[,] . . . as shown by the lack of record from the municipality"). They also cited the "danger doctrine,"[9] explaining that because the Municipality was unable to provide adequate shelter for the homeless, taking away their "bed[d]ing, cooking implements, and protection against the elements" through campsite abatement violated the Eighth Amendment's prohibition on cruel and unusual punishment.[10] The Municipality responded that the Municipal

---

**8**  In its superior court brief the Municipality identified Davis Park as "located on Joint Base Elmendorf-Richardson property and . . . leased to the Municipality for parks and recreation purposes."

**9**  Under the "state-created danger" doctrine, "state officials could be held liable where they affirmatively and with deliberate indifference placed an individual in danger she would not otherwise have faced." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1066 (9th Cir. 2006).

**10**  *See* U.S. Const. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."). In *Martin v. City of Boise*, 920 F.3d 584, 616 (9th Cir. 2019), the Ninth Circuit held "that the Eighth Amendment prohibits the imposition of criminal penalties for sitting, sleeping, or lying

Code provides only for appeal of the notice of abatement, not of the abatement decision itself. According to the Municipality, this meant that the only action subject to challenge was the posted notice and whether it complied with the Code's notice requirements;[11] therefore, because the appellants agreed that the notice *did* comply with the Code, there was nothing left to their claims that the superior court had jurisdiction to decide on appeal.

The superior court agreed with the Municipality's position. It decided that the Code limited the court's appellate jurisdiction to the notice's legal sufficiency, and because the appellants did not challenge that, their case had to be dismissed. The court further observed, however, that the appellants' claims were "not wholly without merit" and that it agreed with the parties' stipulation that "a civil suit is an available recourse to address [the individuals'] claims."

One of the individual appellants, Gregory Smith, appeals the dismissal. The American Civil Liberties Union of Alaska filed a brief as an amicus curiae and argued the case on Smith's behalf.

---

outside on public property for homeless individuals who cannot obtain shelter." The United States Supreme Court abrogated this holding in *City of Grants Pass v. Johnson*, 144 S. Ct. 2202, 2216-17, 2220 (2024), holding that a state's decisions about what conduct to criminalize did not implicate the Eighth Amendment and rejecting the argument that the public-camping ordinances at issue criminalized not conduct but the status of homelessness.

[11] The Code prescribes where the campsite abatement notice is to be posted ("on or near each tent, hut, lean-to, or other shelter designated for removal") and what information it must contain: the campsite's location, the Code provision authorizing the abatement, a description of appeal rights, and information about the storage and reclaiming of personal property removed from the site. AMC 15.20.020(B)(15)(a)(i)-(iv), (vi) (2023). The Code also requires that notice "be given orally to any persons in or upon the prohibited campsite or who identifies oneself as an occupant of the campsite." AMC 15.20.020(B)(15)(a)(v) (2023).

# III. STANDARD OF REVIEW

The courts' subject matter jurisdiction to hear an administrative appeal presents a question of law; therefore we review the superior court's dismissal order de novo.[12]

# IV. DISCUSSION

## A. Superior Courts Have Jurisdiction Over Substantive Appeals Of Campsite Abatement Decisions.

Pursuant to Alaska Statute 22.10.020(d), the superior court has subject matter jurisdiction "in all matters appealed to it from a subordinate court, or administrative agency when appeal is provided by law." We have long held that appeals from municipal agencies fall within this statutory grant of jurisdiction.[13] We have also held that municipalities' administrative decisions are presumptively subject to judicial review.[14] We do not need to address here whether and to what extent a municipality could, by ordinance, cabin this presumptive right of judicial appeal, because we conclude that the Municipal Code provisions at issue do not purport to limit it.

---

[12] *Osborne v. State, Dep't of Corr.*, 332 P.3d 1286, 1287 (Alaska 2014).

[13] *See Keiner v. City of Anchorage*, 378 P.2d 406, 410 (Alaska 1963) (rejecting argument that statutory grant of jurisdiction "refers only to agencies which are created by the state legislature" and concluding "that the term 'administrative agency' should be construed broadly so as to include a municipal council, acting as a board of adjustment, since it is in fact performing administrative functions").

[14] *Bethel Util. Corp. v. City of Bethel*, 780 P.2d 1018, 1022 (Alaska 1989) ("Unless the legislature provides otherwise, administrative decisions are presumed to be judicially reviewable. Here, the Bethel City Council has not precluded judicial review. Therefore, the law does provide for appeals from the city council's administrative decisions." (citation omitted)); *see also* AS 29.40.060(a) (providing that in area of land use regulation, "[t]he assembly shall provide by ordinance for an appeal by a municipal officer or person aggrieved from a decision of a hearing officer, board of adjustment, or other body to the superior court").

**1.** **The plain language of AMC 15.20.020, and the language of the posted notice itself, support the right to appeal a campsite abatement decision.**

AMC 15.20.020(B) defines prohibited public nuisances, including unlawful campsites.[15] The ordinance creates the appeal process for campsite abatement and explains it in some detail:

> Appeal procedure. A posted notice of campsite abatement is a final administrative decision and appeals shall be to the superior court within 30 days from the date the notice of campsite abatement is posted, in accordance with the Alaska court rules. If the owner or person in possession of personal property at the time the notice is posted responds in writing to the municipality prior to expiration of a ten-day notice of the owner's intention to appeal the campsite abatement to the superior court, the municipality shall not remove the personal property until at least 30 days have passed from the date the notice was first posted, except as provided in subparagraph B.15.f.ii.[16]

The ordinance goes on to provide for a stay of abatement during the pendency of an appeal, though it anomalously allows the Municipality to "remove personal property and store it" during that time.[17]

As noted above, the superior court decided this case on the basis of subject matter jurisdiction, concluding that "subsections (e) and (f) of AMC 15.20.020(B)(15) 'clearly limit superior court jurisdiction to only the "posted notice" actions of municipal agents' and therefore [the superior court] lacks subject matter jurisdiction on all other procedural or substantive respects." The court followed the analysis of another superior court in an earlier case, *Vaughan v. Municipality of Anchorage*, which began by quoting (B)(15)(e): "A posted notice of campsite abatement is a *final administrative decision*

---

[15]    AMC 15.20.020(B)(15).

[16]    AMC 15.20.020(B)(15)(e) (2019).

[17]    AMC 15.20.020(B)(15)(f)(i)–(ii) (2019).

and appeals shall be made to the superior court within 30 days from the date the notice of campsite abatement is posted, in accordance with the Alaska court rules."[18] The *Vaughan* court then noted the ordinance's further provisions allowing the Municipality to seize and store personal property during the pendency of any appeal and providing that "the appeals process under these subsections does not prevent eviction from municipal lands or provide an ability to appeal or stay the eviction part of campsite abatements." Because the authorized appeal process thus could not have any substantive effect on the abatement, the court reasoned that it lacked subject matter jurisdiction to hear any claims other than those regarding the "posted notice" itself — in other words, "actions pertaining to the eviction from Davis Park, and cleanup, seizure, storage, and destruction of personal property during the abatement proceedings . . . are not within the scope of [the superior] court's subject matter jurisdiction."

We are not persuaded that the ordinance's characterization of the notice as the "final administrative decision"[19] supports a conclusion that only the legal sufficiency of the notice may be appealed. The posted notice of a decision may or may not be the decision itself, depending on its substantive content and what preceded it. But the phrase "final administrative decision" undoubtedly represents a deliberate choice of words in the context of describing an appeals process, because judicial appeals from administrative decisions not explicitly identified as final are premature.[20]

---

[18] No. 3AN-21-07931 CI (Alaska Super., June 16, 2022) (emphasis in original) (alteration omitted).

[19] AMC 15.20.020(B)(15)(e).

[20] *Id.*; Alaska R. App. P. 602(a)(2) ("The 30-day period for taking an appeal does not begin to run until the agency has issued a decision that clearly states that it is a final decision and that the claimant has thirty days to appeal."); *Mat-Su Valley Med. Ctr., LLC v. Advanced Pain Ctrs. of Alaska, Inc.*, 218 P.3d 698, 706 (Alaska 2009) (noting that if agency fails to include this information when communicating its decision, superior court must relax 30-day appeal deadline).

Reasonably read, the ordinance's statement that a posted notice "is a final administrative decision" is meant not to restrict the subject matter of appeals to the notice itself, but rather to simply inform the reader that once the notice is posted, the 30-day period for appeal has begun to run.

The Code's language is reflected in the notice posted at Davis Park, which states that it "serves as a final decision of the Municipality of Anchorage that this posted zone/campsite is subject to abatement" and that "[y]ou may appeal this decision." And while the notice may not contain the full extent of the decision-making that preceded it, the substance of the decision is reflected in the notice's language. For example, the notice states that "[t]his is not a legal area for storage or shelter" and "this posted zone/campsite is subject to abatement." In order for a campsite to be "subject to abatement," it must be "an area where one or more persons are camping on public land in violation of section 8.45.010 [defining trespass under the penal code], chapter 25.70 [listing prohibited conduct on public lands], or any other provision of this Code."[21] Determining the accuracy of the Municipality's legal conclusions requires interpreting the Code and applying that interpretation to the facts, tasks the courts are well equipped to handle.[22]

We do recognize the ordinance's procedural anomaly. Subsection (B)(15)(f)(i) states that "[a]batement of the campsite area is stayed until the appeal is withdrawn, settled, or a decision is issued and any subsequent appeal rights expire," but subsection (B)(15)(f)(ii) adds the proviso that "the municipality may remove personal

---

[21]    AMC 15.20.020(B)(15) (2023).

[22]    *See Haight v. City & Borough of Juneau*, 448 P.3d 254, 258 (Alaska 2019) (noting that "reviewing the government's adherence to standards falls within the traditional competence of the courts"); *O'Callaghan v. Rue*, 996 P.2d 88, 94 (Alaska 2000) (noting that "interpretation of statutory language" is "a function uniquely within the competence of the courts").

property and store it until either the appeal is withdrawn, settled, or a decision is issued and any subsequent appeal rights expire."[23] The ordinance thus appears to provide that although abatement is stayed pending a timely appeal, the removal and storage of personal property may continue. But what more is there to abatement besides the removal of personal property from a prohibited campsite?[24]

Even if we were to assume, however, that the ordinance does not allow for an effective stay of the abatement, we would still conclude that it does not restrict the right to appeal from the abatement decision itself. Whether or not abatement is stayed, a successful appeal could presumably restore to the individual the right to camp in the area the Municipality claimed was subject to abatement. In short, we see nothing in the ordinance or in the language of the posted notice that purports to restrict the right to appeal to the notice's legal sufficiency.

### 2. The legislative history of AMC 15.20.020 supports the right to appeal a campsite abatement decision.

The legislative history of AMC 15.20.020(B)'s current text supports our conclusion that the right to appeal to the superior court is intended to attach to the decision to abate a campsite and not just the legal sufficiency of the notice of that decision.

AMC 15.20.020(B)(15), making an "illegal" campsite[25] a public nuisance, was added to the code in 2009 and amended in 2010 to provide a full description of the

---

[23] AMC 15.20.020(B)(15)(f)(i), (ii) (2019).

[24] The ordinance lists a variety of "personal property removed from a prohibited campsite" that, "when in fair and usable condition," "shall be deemed valuable and eligible for storage," including such basic elements of camp life as "[t]ents and similar self-contained shelter[s]," "[s]leeping bags," "[t]arps," "[g]enerators," and "[c]ooking equipment." AMC 15.20.020(B)(15)(c)(iii).

[25] The term used in the current code is "prohibited campsite." AMC 15.20.020(B)(15).

"appeal procedure."[26]  The amended appeal procedure was much more comprehensive at the administrative level than it is now, including a "quasijudicial" hearing before an administrative hearing officer before any judicial appeal could be taken.  The ordinance described the appeal procedure as follows:

> A posted notice of campsite abatement is final if a campsite occupant does not file a notice of appeal under section 3.60.035 with the municipal administrative hearing office by the date indicated on the notice.  To be filed with the administrative hearing office, the notice of appeal must be received prior to the time and date on the posted notice after which abatement may commence.  An appeal is filed with the administrative hearing office upon receipt of a written notice mailed or transmitted by facsimile, or upon personal appearance of an appellant camper with a written or verbal request to appeal. Upon receiving a notice of appeal, the administrative hearing office shall schedule a hearing as soon as practicable and no later than five (5) business days following receipt of the appeal.  The notice of the administrative hearing shall be served on the appellant personally, by mail or facsimile if such information for that purpose is provided by the appellant, or posted at the same place or area where the notice of abatement being appealed was posted.  The administrative hearing shall not proceed unless there is proof of service or posting at least two (2) business days prior to the hearing.  Proof of service or posting may be submitted by affidavit, and may be accomplished by any municipal employee or a person qualified for service of process under the Alaska court rules. The issues at the hearing are whether (i) the campsite is illegal and (ii) all the property found thereon may be disposed of as waste forthwith. If the administrative hearing officer affirms the notice of campsite abatement, the municipality may proceed to abate the campsite without delay and all personal property found thereon disposed of as waste.  Except as otherwise provided in this subsection, the

_____

[26]  Anchorage, Ordinance 2009-83(S) (July 7, 2009); Anchorage, Ordinance 2010-43(S) (June 22, 2010).

appeal hearing shall be conducted as a quasijudicial proceeding under chapter 3.60.[27]

Most notably for purposes of the issue before us now, the ordinance's description of the appeal process defined the two "issues [to be determined] at the [administrative] hearing" as: "whether (i) the campsite is illegal and (ii) all the property found thereon may be disposed of as waste forthwith."[28]

This ordinance — amended again in September 2010, with the above-quoted portion left intact[29] — was challenged in 2010 and struck down by a superior court in *Engle v. Municipality of Anchorage*.[30] Addressing the appeals process, the *Engle* court ruled that because final decisions by the administrative hearing officer on abatements were stayed for only two days before abatement could continue and "waste" property could be destroyed, potential appellants could not effectively protect their property through either administrative appeal or the court system, meaning that the appeal process as then outlined did not afford due process of law.[31]

The Anchorage Assembly responded by passing an ordinance that, among other things, changed the appeals process to its current form and provided for longer-term storage of personal property pending appeal "until either the appeal is withdrawn, settled, or a decision is issued and any subsequent appeal rights expire."[32] The

---

[27] Anchorage, Ordinance 2010-43(S) (June 22, 2010).

[28] *Id.*

[29] Anchorage, Ordinance 2010-63 (Sept. 14, 2010).

[30] No. 3AN-10-7047 CI (Alaska Super., Jan. 4, 2011).

[31] *Id.* at 21-23.

[32] Anchorage, Ordinance 2011-52 (Apr. 26, 2011); *see* Anchorage Assembly Memorandum, 226-2011 (Apr. 12, 2011).

ordinance entirely eliminated the intermediate step of appeal to the administrative hearing office, replacing it with a direct appeal to the superior court.[33]

Importantly for this case, deleting the ordinance's description of the administrative hearing process included deleting the definition of the issues to be determined at the administrative hearing.[34] This raises the question whether the Assembly actually intended to narrow the issues that could be appealed from what they had been expressly — "whether (i) the campsite is illegal and (ii) all the property found thereon may be disposed of as waste forthwith"[35] — to something much narrower: the legal sufficiency of the posted notice.

We see no reason to believe that this was the Assembly's intent. The *Engle* decision, to which the Assembly was reacting,[36] was primarily concerned with procedural due process: ensuring that occupants of abated campsites could exercise their appeal rights without being deprived of their personal property before the appeal was resolved.[37] The Assembly's remedy was to cut out the intermediate step of an administrative hearing and, in essence, let the courts handle it. This meant it was no longer necessary to instruct the administrative hearing office as to what issues were within its authority to decide on abatement appeals. But we cannot read the legislative silence as an affirmative decision that the courts should not be considering at least the same core questions as had formerly been left to the hearing officer.

---

[33] Anchorage, Ordinance 2011-52 (Apr. 26, 2011).

[34] *Id.*

[35] Anchorage, Ordinance 2010-43(S) (June 22, 2010).

[36] Anchorage Assembly Memorandum, 226-2011 (Apr. 12, 2011) (amending AMC 15.20.020(B)(15) and noting that the amendments were designed to resolve the due process constitutional issues highlighted by the superior court's decision in *Engle v. Mun. of Anchorage*).

[37] *Engle v. Mun. of Anchorage*, No. 3AN-10-7047 CI at 21-23 (Alaska Super., Jan. 4, 2011).

We conclude, therefore, that the intended scope of review under the current ordinance is at least as broad as it was before *Engle*, including "whether (i) the campsite is illegal and (ii) all the property found thereon may be disposed of as waste forthwith."[38] The question of the campsite's legality encompasses the constitutional due process issues Smith raises; although they would be outside the jurisdiction of the administrative hearing office, they fall within the special expertise of the courts.[39] Smith's challenges to the campsite abatement were proper subjects for judicial review on appeal.

**B.** **If The Superior Court Determines That The Record Is Insufficient For Appellate Review, It May Order The Municipality To Supplement The Record, Remand To The Municipality For Development Of A Sufficient Record, Or Order A Trial De Novo.**

Because the Municipality considered appellate review to be limited to the legal sufficiency of the posted notice — i.e., whether the notice complied with the ordinance's requirements for placement and content — it prepared a two-page administrative record for purposes of this appeal,[40] consisting only of two copies of the

---

[38] Anchorage, Ordinance 2010-43(S) (June 22, 2010).

[39] *See Griswold v. City of Homer*, 556 P.3d 252, 272 (Alaska 2024) ("Certain pure issues of law, like constitutional issues and certain questions of statutory validity, are "within the special expertise" of the court rather than the agency." (internal quotation marks omitted) (quoting *RBG Bush Planes, LLC v. Kirk*, 340 P.3d 1056, 1061 (Alaska 2015))); *Alaska Pub. Int. Rsch. Grp. v. State*, 167 P.3d 27, 36 (Alaska 2007) ("Administrative agencies do not have jurisdiction to decide issues of constitutional law.").

[40] *See* Alaska R. App. P. 604(b)(1)(A) (providing that in appeals from administrative agencies, "[t]he record on appeal consists of the original papers and exhibits filed with the administrative agency, and a typed transcript of the record of proceedings before the agency"). Preparing and filing the record is the responsibility of the administrative agency, though the reasonable costs of preparation are ordinarily borne by the appellant "[i]n the absence of an agreement between the parties or an order of the court to the contrary." Alaska R. App. P. 604(b)(1)(B)(iii), (iv).

posted notice, one dated and one not. There are no memoranda, emails, notes, or other documentation of the thought process that presumably went into reaching the notice's conclusion that Davis Park was "not a legal area for storage or shelter" and campsites there should be abated. The Municipality contends that the sparsity of this record, which it prepared, is enough of a hindrance to appellate review that it necessarily limits the superior court's jurisdiction.

The Municipality relies in part on a series of cases involving prisoners' appeals, in which we have noted our limited subject matter jurisdiction in the specific area of Department of Corrections (DOC) disciplinary decisions.[41] As observed above, AS 22.10.020(d) gives the superior court jurisdiction over agency appeals "when appeal is provided by law"; because "[t]here is no statutory provision for an appeal from a DOC administrative decision," the general jurisdictional statute does not confer jurisdiction in those matters.[42] Through case law we have carved out an exception "where there is an alleged violation of fundamental constitutional rights in an adjudicative proceeding producing a record capable of review."[43]

We have described what is necessary for a proceeding to be deemed "adjudicative":

> The essential elements of adjudication include adequate notice to persons to be bound by the adjudication, the parties' rights to present and rebut evidence and argument, a formulation of issues of law and fact in terms of specific parties and specific transactions, a rule of finality specifying the point in the proceeding when presentations end and a final decision is rendered, and any other procedural elements

---

[41] *See, e.g.*, *Osborne v. State, Dep't of Corr.*, 332 P.3d 1286, 1288 (Alaska 2014); *Welton v. State, Dep't of Corr.*, 315 P.3d 1196, 1197 (Alaska 2014); *Brandon v. State, Dep't of Corr.*, 938 P.2d 1029, 1031-32 (Alaska 1997).

[42] *Welton*, 315 P.3d at 1197 (quoting *Brandon*, 938 P.2d at 1031).

[43] *Id.* at 1198 (quoting *Brandon*, 938 P.2d at 1032).

necessary for a conclusive determination of the matter in question.[44]

Based on the rationale of our DOC decisions, the Municipality argues that "the Superior Court lacked jurisdiction to consider Smith's constitutional grievances because the decision was not made in an adjudicative proceeding and did not produce a record capable of review for constitutional issues."

But our DOC decisions are inapposite. They define the limits of an exception to what would otherwise be a complete lack of superior court appellate jurisdiction in an area in which appeal is not "provided by law."[45] Here, appeal *is* provided by law: we have held that municipalities' administrative decisions are presumptively subject to judicial review,[46] the Anchorage Assembly has directed, by ordinance, that "appeals shall be to the superior court,"[47] and the posted notice gives the reader the same instruction. A right to appeal generally encompasses the right to a record sufficient for appellate review.[48] A record that does not satisfy this purpose must, if possible, be made sufficient so that the right to appeal is not rendered meaningless.

---

[44]    *Id.* (quoting *Brandon*, 938 P.2d at 1032).

[45]    AS 22.10.020(d).

[46]    *Bethel Util. Corp. v. City of Bethel*, 780 P.2d 1018, 1022 (Alaska 1989).

[47]    AMC 15.20.020(B)(15)(e) (2019).

[48]    This principle is often stated in the criminal context, but we do not see why it would apply differently here. *See, e.g.*, *State v. Sahagun-Llamas*, 458 P.3d 875, 882 (Ariz. App. 2020) (noting that constitutional right to appeal criminal conviction "includes the right to a record that is sufficiently complete 'to afford defendant a meaningful right of appeal' " (quoting *State v. Schackart*, 858 P.2d 639, 644 (Ariz. 1993))); *In re M.S.*, 940 S.W.2d 789, 791 (Tex. App. 1997) ("The right to appeal includes the right to a record for meaningful review."); *State v. Larson*, 381 P.2d 120, 121-22 (Wash. 1963) (holding that due process requires a " 'record of sufficient completeness' for review of the errors raised by the defendant in a criminal case" (quoting *Draper v. Washington*, 372 U.S. 487, 497 (1963))).

The Municipality aptly cites our decision in *Fields v. Kodiak City Council*[49] about the importance of an administrative record to appellate review. There, reviewing a city board of adjustment's decision to deny a zoning variance, we held that "[o]nly by focusing on the relationship between evidence and findings, and between findings and ultimate action, can we determine whether the board's action is supported by substantial evidence."[50] According to the Municipality, this supports its contention that appellate review in this case is limited to the posted notice and the notice requirements of the Code, because the record is otherwise devoid of "evidence and findings." But this argument overlooks our resolution of *Fields*. Because the board's failure to "set forth findings" made it "impossible to determine whether the denial [was] based on appropriate factors," we remanded the case "for the purpose of directing the Kodiak board of adjustment to set forth findings relevant to the conditions required for granting a variance."[51]

In *Southeast Alaska Conservation Council v. State*, we considered a challenge to the State's decision to enter into a timber contract; the decision was based on "a written finding and decision document by the Director of Forest, Land and Water Management" which "reflect[ed], albeit somewhat sparsely, the facts and premises on which the decision to enter into the contract was based."[52] The superior court held a

---

[49]    628 P.2d 927 (Alaska 1981).

[50]    *Id.* at 933.

[51]    *Id.* at 934; *see also White v. Alaska Com. Fisheries Entry Comm'n*, 678 P.2d 1319, 1322 (Alaska 1984) ("The threshold question in an administrative appeal is whether the record is adequate to permit meaningful judicial review.").

[52]    665 P.2d 544, 548-49 (Alaska 1983) *superseded by statute on other grounds*, Ch. 86, § 1(b), SLA 2003, *see Alaska Conservation Found. v. Pebble Ltd. P'ship*, 350 P.3d 273, 281 (Alaska 2015).

trial on whether the contract violated "Alaska constitutional and statutory requirements that timber be harvested on a sustained yield basis."[53]

Preliminary to our review of the merits, we described the central importance of a decisional document in administrative appeals:

> A decisional document, done carefully and in good faith, serves several salutary purposes. It facilitates judicial review by demonstrating those factors which were considered. It tends to ensure careful and reasoned administrative deliberation. It assists interested parties in determining whether to seek judicial review. And it tends to restrain agencies from acting beyond the bounds of their jurisdiction.[54]

We then explained that the superior court, on its appellate review, "should have focused on the decisional document. If the document was found to contain an inadequate[ly] reasoned explanation, the court was authorized to remand it to the agency for supplementation instead of conducting a trial."[55] We noted that in the case then before us, the combination of "the Director's written decision and the trial evidence" meant that "the reasoning underlying the sale [was] clear," so that "no remand for supplementation [was] necessary."[56] But we instructed that "[i]n future cases involving important natural resource sales we strongly suggest . . . a remand if the basis for agency action is unclear."[57]

---

[53] *Id.* at 548.

[54] *Id.* at 549 (footnote omitted).

[55] *Id.* (footnote omitted).

[56] *Id.*

[57] *Id.*; *see also White v. Alaska Com. Fisheries Entry Comm'n*, 678 P.2d 1322 (Alaska 1984) (noting that if record is not "adequate to permit meaningful judicial review" "and the basis of an administrative decision is unclear, it may be necessary to remand the case for preparation of a record revealing the agency's reasoning process").

We express no view on whether the two-page administrative record in this case will be an adequate basis on which to decide the constitutional issues raised on appeal from the campsite abatement decision. It may be that no further insight into the decisional process and no other factual development is necessary for the superior court to decide the issues raised. If, however, the court determines that the existing administrative record is inadequate for purposes of meaningful appellate review, our cases illustrate some of the options for dealing with that inadequacy, including (1) ordering the Municipality to supplement the record,[58] (2) remanding the case to the Municipality for further proceedings, and (3) conducting a trial de novo.[59] The superior court has discretion in deciding how best to ensure that it has a record sufficient for appellate review.[60]

## V.    CONCLUSION

We REVERSE the decision of the superior court and REMAND the case to the superior court for further proceedings consistent with this opinion.

---

[58]    *Sw. Marine, Inc. v. State, Dep't of Transp. & Pub. Facilities, Div. of Alaska Marine Highway Sys.*, 941 P.2d 166, 172 (Alaska 1997) ("When the superior court acts as an appellate court, it may decide to supplement the record or order a de novo examination of the record at its discretion.").

[59]    *Yost v. State, Div. of Corps., Bus. & Pro. Licensing*, 234 P.3d 1264, 1274 (Alaska 2010) (recognizing that "we have upheld or directed application of de novo review 'where the agency record is inadequate' " among other circumstances (quoting *S. Anchorage Concerned Coal., Inc. v. Mun. of Anchorage Bd. of Adjustment*, 172 P.3d 774, 778 (Alaska 2007))).

[60]    *Sw. Marine*, 941 P.2d at 172.